### PEOPLE v KENNETH SMITH

Docket No. 72168. Submitted June 11, 1984, at Grand Rapids.—Decided May 21, 1985.

Kenneth Smith, an inmate at the Marquette Branch Prison, was convicted by a jury in Marquette Circuit Court of assaulting another inmate with intent to do great bodily harm less than murder and was sentenced, Edward A. Quinnell, J. Defendant appeals. *Held:*

1. Whether or not the trial court lost jurisdiction over defendant because more than 390 days elapsed between the time the complaint was filed and the day defendant's trial began cannot be determined from the present record. Therefore, the matter is remanded to the trial court for an evidentiary hearing with regard to the 136-day delay following the scheduled trial date. At the hearing, the issue of short term docket congestion allegedly caused by prison riots, as well as the effect on the docket of the death of one of the two circuit judges, shall be addressed. In addition, the issues of whether the prosecution knew or should have known about res gestae witnesses and whether or not the prosecution used due diligence to find and endorse res gestae witnesses shall be addressed. If it is found

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 21A Am Jur 2d, Criminal Law §§ 652 *et seq.,* 849 *et seq.*
Effect on operation of Speedy Trial Act (18 USCS §§ 3161 *et seq.)* of indictment returned by grand jury whose term has expired. 64 ALR Fed 916.

[2] 21A Am Jur 2d, *Criminal Law* § 860.

[3] 81 Am Jur 2d, Witnesses § 2.

[4] 75 Am Jur 2d, Trial § 876 *et seq.*
Modern status of law regarding cure of error, in instruction as to one offense, by conviction of higher or lesser offense. 15 ALR4th 118.

[5-7] 6 Am Jur 2d, Assault and Battery § 48 *et seq.*
Intent to do physical harm as essential element of crime of assault with deadly or dangerous weapon. 92 ALR2d 635.

[8, 9] 75 Am Jur 2d, Trial § 192 *et seq.*
Violation of federal constitutional rule (Griffin v California) prohibiting adverse comment by prosecutor or court upon accused's failure to testify, as constituting reversible or harmless error. 24 ALR3d 1093.

that the prosecution knew, or should have known, of the witnesses, or that the prosecution failed to use due diligence in ascertaining the existence of res gestae witnesses, then the court shall dismiss the charges against defendant because the prosecution's failure to perform its duty would have caused the specific adjournment in question and tainted what could otherwise be excusable delay.

2. The trial court erred in not giving defendant's requested jury instruction on simple assault. That error was harmless, however, since the jury refused to convict defendant of the lesser offense of felonious assault.

3. The prosecutor's comment during closing argument that testimony of a prosecution witness had not been contradicted was not an improper comment on defendant's Fifth Amendment right not to testify and did not shift the burden of proof to defendant.

Remanded.

1. CRIMINAL LAW — 180-DAY RULE — DELAYS IN BRINGING INMATE TO TRIAL.

The burden is on the prosecution to justify any delays which prevent bringing an inmate to trial within 180 days of notice of any untried warrant against the inmate (MCL 780.131; MSA 28.969[1]).

2. CRIMINAL LAW — 180-DAY RULE — DELAYS IN BRINGING INMATE TO TRIAL — DOCKET CONGESTION.

Delays in bringing an inmate to trial on an untried warrant because of docket congestion, except for short-term docket congestion caused by extraordinary circumstances, are attributable to the prosecution.

3. PROSECUTING ATTORNEYS — RES GESTAE WITNESSES.

A prosecuting attorney in a criminal case has an affirmative duty to diligently attempt to discover the existence of any possible res gestae witnesses; a defendant's knowledge of the existence of res gestae witnesses does not excuse the prosecution's failure to endorse or produce the witnesses unless the prosecution neither knew nor should have known of their existence.

4. CRIMINAL LAW — JURY INSTRUCTIONS — MISDEMEANORS.

The conditions for an instruction on a lesser included misdemeanor offense in a trial for a felony are that there be a proper request specifying the offense, an appropriate inherent relationship between the offense charged and the misdemeanor, a rational basis supported by evidence adduced at trial which would justify conviction of the misdemeanor, adequate notice to

the defendant where the prosecution requests the instruction that the misdemeanor is one of the charges against which he is expected to defend, and no undue confusion or other injustice as a result of the instructions.

5. ASSAULT AND BATTERY — ASSAULT WITH INTENT TO COMMIT GREAT BODILY HARM LESS THAN MURDER.

The elements of assault with intent to commit great bodily harm less than murder include (1) an attempt or offer with force or violence to do corporal harm to another (assault) and (2) an intent to do great bodily harm less than murder.

6. ASSAULT AND BATTERY — FELONIOUS ASSAULT.

The elements of felonious assault are: (1) an assault (2) with a . dangerous weapon.

7. ASSAULT AND BATTERY — SIMPLE ASSAULT — FELONIOUS ASSAULT — DANGEROUS WEAPONS.

The misdemeanor simple assault is distinguished from the felony assault with intent to do great bodily harm less than murder by the actor's intended result; felonious assault is distinguished from simple assault by the use of a dangerous weapon in the perpetration of the assault.

8. CRIMINAL LAW — EVIDENCE — PROSECUTORIAL COMMENT.

A prosecutor's statement in closing argument that the evidence is uncontroverted does not constitute an impermissible comment on the defendant's failure to take the stand.

9. CRIMINAL LAW — EVIDENCE — PROSECUTORIAL COMMENT.

An argument by a prosecutor which suggests that a defendant must prove something may tend to shift the burden of proof, resulting in error.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Gary L. Walker,* Prosecuting Attorney, and *Peter L. Plummer,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Herb Jordan),* for defendant on appeal.

Before: R. B. BURNS, P.J., and D. E. HOLBROOK, JR., and G. R. DENEWETH,* JJ.

PER CURIAM. Following a jury trial, defendant was convicted of assault with intent to do great bodily harm less than murder, MCL 750.84; MSA 28.279. Defendant was sentenced to imprisonment for from 3 to 10 years, and he appeals as of right.

Defendant first argues that the trial court lost jurisdiction over him because more than 390 days elapsed between the time the complaint was filed and the day defendant's trial began, a violation of the "180-day rule", MCL 780.131; MSA 28.969(1).

A review of the record shows defendant's conviction arose out of an incident which occurred in the dining hall of the Marquette Branch Prison on January 2, 1982. The complaint was filed and a warrant issued on January 12, 1982. Defendant was bound over to circuit court following a preliminary examination held on January 21, 1982. Defendant was arraigned in circuit court the following day. A pretrial conference was held January 27, 1982, and the court's pretrial summary was mailed to the parties on February 8, 1982. The pretrial summary stated in part:

"Apparently there were some other inmates seated at a table near the place where the incident occurred. Both prosecution and defense will try to establish the identity of these people, and cause them to be interviewed to determine whether they have any knowledge of the events; if so, they will be called as res gestae witnesses."

According to the pretrial summary, the matter was to be considered ready for trial "anytime after March 31, 1982".

At the pretrial conference, a question appar-

* Circuit judge, sitting on the Court of Appeals by assignment.

ently came up regarding statements defendant made during the course of administrative disciplinary proceedings following the incident in question. On February 24, 1982, defendant filed a motion to suppress those statements and a speedy trial demand. The parties apparently decided defendant's motion could be resolved on briefs, and the hearing scheduled for March 12, 1982, did not take place. Defendant's four page brief in support of his motion to suppress was filed on March 30, 1982.

The prosecution did not file a response brief until June 25, 1982, and the court issued its opinion on July 28, 1982, granting, in part, defendant's motion. On September 27, 1982, the court mailed letters to both parties confirming that trial had been scheduled for October 4, 1982. On September 28, 1982, defendant filed a motion to dismiss the charge on the basis that the "180-day rule" had been violated.

At the hearing on defendant's motion, the trial court found that 266 days had passed from the date the complaint issued to the scheduled trial date of October 4, 1982, and that at least 94 of those days were chargeable to defendant because of his motion to suppress. Hence, the court found that, as of October 4, 1982, 172 days, at most, would have passed, thus meaning defendant's trial had been scheduled within 180 days of the issuance of the warrant. We affirm the trial court's finding. However, there was an additional 136-day delay following the October 4, 1982, trial date, making a total of approximately 308 days possibly attributable to the people. Defendant argues that the 136-day delay subsequent to defendant's motion to dismiss is entirely the fault of the people because the prosecutor failed to endorse res gestae

witnesses, thus necessitating an adjournment of the October 4, 1982, scheduled trial.

In *People v Hendershot,* 357 Mich 300, 303-304; 98 NW2d 568 (1959), the Court stated:

"Clearly, if no action is taken and no trial occurs within 180 days, the statute applies. If some preliminary step or action is taken, followed by inexcusable delay beyond the 180-day period and an evident intent not to bring the case to trial promptly, the statute opens the door to a finding by the court that good-faith action was not commenced as contemplated by [MCL 780.133; MSA 28.969(3)], thus requiring dismissal. The statute does not require the action to be commenced so early within the 180-day period as to insure trial or completion of trial within that period. If, as here, apparent good-faith action is taken well within the period and the people proceed promptly and with dispatch thereafter toward readying the case for trial, the condition of the statute for the court's retention of jurisdiction is met. When the people have moved the case to the point of readiness for trial and stand ready for trial within the 180-day period, defendant's delaying motions, carrying the matter beyond that period before the trial can occur, may not be said to have brought the statute into operation, barring trial thereafter."

The burden is on the prosecution to justify delay in bringing a defendant to trial. *People v Forrest,* 72 Mich App 266, 273; 249 NW2d 384 (1976). Except for short-term docket congestion caused by extraordinary circumstances, delay caused by docket congestion is attributable to the prosecution, *Forrest, supra,* pp 272-273.

In the instant case, the transcript of the motion to dismiss shows that the prosecutor raised the problem of the large influx of cases stemming from the May 26, 1981, Marquette Branch Prison riots. However, the trial court reached its decision in favor of the prosecution without addressing that

issue. While the number of "riot cases" may have been immaterial to the court's resolution of the pre-October delay, we do not feel that we can assume that the large number of cases related to the prison riot did not contribute to the post-October delay. This is especially so when, as is evident from the transcript of the hearing on defendant's motion to dismiss, the other circuit judge in the circuit died near the date of the hearing on defendant's motion.

In a criminal case, a prosecuting attorney has an affirmative duty to diligently attempt to discover the existence of any possible res gestae witnesses; a defendant's knowledge of the existence of res gestae witnesses does not excuse the prosecution's failure to endorse or produce the witnesses unless the prosecution neither knew nor should have known of their existence. *People v Rivera,* 114 Mich App 419, 423-424; 319 NW2d 355 (1982).

The problem with resolving this issue is that there is nothing in the record to show that the prosecutor had success or failure in establishing the identities of "res gestae witnesses". Clearly, the prosecutor could have obtained the names of most, if not all, inmates in the dining hall during the incident. However, because of the manner in which defendant's motion to dismiss was handled, at that juncture the people had no opportunity to show that they did not know or should not have known of the existence of res gestae witnesses, nor was the prosecution afforded the opportunity to show that they had met their duty as prosecutors to use "due diligence" to ascertain who the res gestae witnesses were. Moreover, it appears that defense counsel was aware of the identities of most, if not all, of the alleged res gestae witnesses at the January pretrial conference but failed to

move for their endorsement until September 28, 1982, even though the matter was to be "considered ready for trial at anytime after March 31, 1982".

Although defendant's failure to bring a motion to endorse res gestae witnesses does not excuse the prosecution's failure to endorse them, under the facts and procedural course of this case, we find it appropriate to remand this matter for an evidentiary hearing with regard to the 136-day delay following the October 4, 1982, scheduled trial date. See *People v Schinzel (On Remand)* 97 Mich App 508; 296 NW2d 85 (1980). At the hearing, the issue of short term docket congestion allegedly caused by the prison riots, as well as the effect of Judge McDonald's death on the docket, shall be addressed. In addition, the issues of whether the prosecution knew or should have known about res gestae witnesses and whether or not the prosecution used "due diligence" to find and endorse res gestae witnesses shall be addressed. If it is found that the prosecution knew, or should have known, of the witnesses, or that the prosecution failed to use "due diligence" in ascertaining the existence of res gestae witnesses, then the court shall dismiss the charges against defendant because the prosecution's failure to perform its duty would have caused the specific adjournment in question and tainted what could otherwise be excusable delay.

Defendant next argues that the trial court committed error by refusing to instruct the jury on the lessor included offense of simple assault, a misdemeanor.

At trial, corrections officer Greene testified that he saw defendant leave the chow line with an empty tray, walk over to the table where Darren Johnson was seated and strike down at Johnson

with a long, slim object in his hand. Greene testified that people's exhibit No. 1 (described as a long bolt with a sharpened end with the end of a toilet brush wrapped with masking tape as a handle) "could have" been what he saw in defendant's hand; he was not positive because he didn't see the whole object during the alleged attack. Greene futher testified that at the time of the incident, from a distance, the object looked black, while people's exhibit No. 1 is silver.

Reginald Brown testified that he was eating his evening meal when he heard Johnson speaking in a loud manner. Immediately after this, Brown briefly saw defendant and Johnson fighting. Brown did not see who threw the first punch, nor did he see a weapon.

Darren Johnson, the alleged victim, denied he was assaulted. Johnson testified that when the guards had him take his shirt off after the incident he had only one wound, to his right stomach area, which was suffered in a football game. He denied having scratches on his head, chest or back.

Dr. Benjamin Ulep, director of medical services for the Marquette Branch Prison, testified that he examined Johnson two days after the incident. Johnson's medical records showed that he had six superficial wounds to the head, chest, abdomen and back. Ulep testified that, although Johnson's injuries were consistent with the weapon introduced, he would expect more severe injuries than those Johnson suffered if People's Exhibit No. 1 had been used to assault Johnson.

In *People v Stephens,* 416 Mich 252, 261-265; 330 NW2d 675 (1982), the Supreme Court listed five conditions that must be met prior to giving jury instructions on lesser included misdemeanors in a felony tiral. The five (5) conditions are:

1. A proper request must be made.

2. An appropriate relationship between the charged offense and the requested misdemeanor must exist.

3. The requested instruction must be supported by a rational view of the evidence adduced at trial. This means not only that must there be some evidence which would justify conviction of the lesser offense, but that proof of the element or elements differentiating the two crimes must be sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser included offense.

4. If the prosecution requests such an instruction, the defendant must have adequate notice.

5. The requested instruction should not result in undue confusion or some other injustice.

Defendant requested an instruction for simple assault. Clearly an appropriate relationship exists between assault with intent to do great bodily harm less than murder and the misdemeanor simple assault, as both relate to the protection of the same interest (to protect people from corporal harm), and proof of the lesser offense is necessarily presented as part of the showing of the commision of the greater offense.

We believe that a rational view of the evidence adduced at trial supports the requested instruction. Brown's testimony that he saw Johnson and defendant fighting but that he did not see a weapon could have been interpreted as being contradictory to officer Greene's version of events. There was a question as to whether or not the weapon in evidence was in fact *the* weapon that Greene allegedly saw in defendant's hand. There was testimony that several other inmates were in the area of the defendant at the time of the incident. Further, Dr. Ulep testified that he would have expected more severe injuries if the seized

weapon had been used in the alleged assault. Based on these facts, the jury could have consistently found defendant innocent of the greater offense and guilty of the lesser included offense of simple assault. The court therefore erred in denying defendant's request for an instruction on simple assault.

Since we find the trial court erred in not giving the misdemeanor instruction for simple assault, we must determine whether such error was harmless. In *People v Rochowiak,* 416 Mich 235, 248-249; 330 NW2d 669 (1982), the Court stated:

"[W]e do not hold that failure to give lesser offense instructions can never be harmless. The error may indeed be harmless in a case where it is clear that the jury was presented with a lesser offense or offenses consistent with the defendant's theory which was rejected, and made findings of fact, implicit in the verdict, which would preclude conviction of the charge upon which an instruction was refused, or where the differences between the various offenses concerned factual elements, the existence of a weapon (armed or non-armed), the completion of the offense (attempt), the use of force (larceny or robbery) and not the state of mind of the defendant (murder, manslaughter, reckless use; assault with intent to murder, with intent to commit great bodily harm less than murder, felonious assault)."

In the instant case the jury instructions were, in pertinent part, as follows:

"The defendant in this case is charged with a crime known as assault with intent to commit great bodily harm but less than the crime of murder. Any person who assaults another intending to cause great bodily harm less than murder is guilty of this offense.

"The defendant pleads not guilty to this charge. So, to establish this charge, the prosecution must prove each of the following elements beyond a reasonable doubt. First, that the defendant tried to physically

injure another person. Secondly, that he had the present ability to cause an injury, or at least believed that he had that ability. Third, at the time of making the assault, the defendant must have intended to cause great bodily harm. * * *

* * *

"You may also consider whether the defendant is guilty of a related but somewhat less serious offense known as felonious assault or assault with a dangerous weapon. Any person who assaults another with a gun, revolver, pistol, knife, iron bar, club, brass knuckles, or other dangerous weapon, but without intending to commit the crime of murder, *and without intending to inflict great bodily harm less than the crime of murder is guilty of this charge.* The defendant of course by his plea of not guilty to assault with intent to do great bodily harm has also pled not guilty to felonious assault."

The elements of assault with intent to commit great bodily harm less than murder include (1) an attempt or offer with force or violence to do corporal harm to another (assault) and (2) an intent to do great bodily harm less than murder. *People v Boles,* 127 Mich App 759, 770; 339 NW2d 249 (1983). The elements of felonious assault are: (1) an assault; (2) with a dangerous weapon. *People v Kubasiak,* 98 Mich App 529; 296 NW2d 298 (1980). The misdemeanor simple assault is distinguished from the felony assault with intent to do great bodily harm less than murder by the actor's intended result. Felonious assault is distinguished from simple assault by the use of a dangerous weapon in the perpetration of the assault. *People v VanDiver,* 80 Mich App 352, 356; 263 NW2d 370 (1977).

In the instant case, the jury was clearly given instructions consistent with defendant's theories of the case, *i.e.,* that no assault was proven or, if there was an assault, that defendant did not in-

tend to do great bodily harm. Since the only difference between simple assault and felonious assault is the use of a dangerous weapon (and not a state of mind), it strains credulity and defies logic to suggest that the trial court's decison be reversed where the jury rejected the opportunity to find defendant guilty of felonious assault. Unlike *Rochowiak, supra,* in the instant case there is no third possibility on the spectrum of ciminal responsibility *(mens rea)*—the jury could find that defendant committed an assault with the intent to do great bodily harm less than murder, or that he committed an assault (with a dangerous weapon) but without the intent to do great bodily harm, or that defendant was not guilty. The state of mind for simple assault and felonious assault is the same. Therefore, the jury's rejection of defendant's theory that he did not intend to do great bodily harm, as manifested by their refusal to convict him of the lesser offense of felonious assault, would preclude conviction of simple assault. The trial court's error was therefore harmless.

Finally, defendant argues that the following statement made by the prosecutor in his closing argument impermissibly shifted the burden of proof to defendant and constituted an improper comment on defendant's Fifth Amendment right not to testify.

"Louis Greene saw him [defendant] stab Darren Johnson and there has been no contradictory evidence to that fact. None."

We find defendant's argument to be without merit. This Court has previously held that a statement that the evidence is uncontroverted does not constitute an impermissible comment on a defen-

dant's failure to take the stand. *People v Balog,* 56 Mich App 624, 629; 224 NW2d 725 (1974); *People v Jacoboni,* 34 Mich App 84, 86; 190 NW2d 720 (1971). An argument by a prosecutor which suggests that a defendant must prove something may tend to shift the burden of proof, resulting in error. *People v Heath,* 80 Mich App 185, 188; 263 NW2d 58 (1977). However, we do not believe that the comment in question impermissibly shifted the burden of proof. The statement by the prosecutor was merely a comment that the testimony of other witnesses at the scene was consistent with the testimony of Louis Greene. Further, the prosecutor stated three times that it was his duty to prove guilt beyond a reasonable doubt, and the jury was correctly instructed on the burden of proof.

Remanded for proceedings consistent with this opinion.