**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Chadley R. HOFFMAN, Robert C. Itzen, Gloria Gege Den Hartog, Richard T. Breum, Michael David Otton, and Lester Estenson, Defendants and Appellants.**

Nos. 15358, 15393, 15417, 15420, 15423 and 15533.

Supreme Court of South Dakota.

Argued March 24, 1987.

Decided July 15, 1987.

Janine Kern, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Scott D. Kading of Moore, Rasmussen, Kading & McGreevy, Sioux Falls, for defendant and appellant Chadley R. Hoffman.

Jeff Larson, Minnehaha County Public Defender, Sioux Falls, for defendants and appellants Robert C. Itzen and Lester Estenson.

Drake A. Titze, Minnehaha County Public Defender, Sioux Falls, for defendants and appellants Gloria Gege Den Hartog, Richard T. Breum, and Michael David Otton.

MORGAN, Justice.

The defendants in this consolidated action appeal denial of the motions to dismiss their respective cases due to State's failure to comply with the provisions of SDCL 23A–44–5.1, the so-called 180–day rule. We reverse and remand with instructions.

SDCL 23A–44–5.1 provides:

> The prosecution shall dispose of all criminal cases by a plea of guilty or nolo contendere, trial or dismissal within one hundred eighty days from the date the defendant has first appeared before a judicial officer on the complaint or indictment. Any period of delay shall be excluded if the trial court finds good cause for the delay. In the event of the prosecution's failure to dispose of the action within the time limit required by this section, the action shall be dismissed.

The rule was adopted by this court on January 7, 1985, after consideration at the rules hearing the previous December. The rule took effect on July 1, 1985. Each of the defendants had been arrested and made their first appearance prior to the effective date of the rule. None of the defendants were brought to trial within 180 days after the effective date of the rule. Hoffman's appeal is before us on petition for intermediate appeal and the balance are direct appeals from judgments of conviction entered in Minnehaha County. Hoffman is charged with a felony triable only in circuit court while the others were all charged with misdemeanors triable in magistrate court.

All of the motions for dismissal in these appeals were heard before the same trial judge as pretrial motions. The trial court denied the various motions because it found that the defendants failed to satisfy the factors set out in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), particularly the lack of affirmative demands for trial and the lack of a showing of prejudice to the defendants. In addition, the trial court found that good cause existed for the delay based on the totality of the circumstances.

We note in passing that denials of dismissals under SDCL 23A–44–5.1 are not appealable to either the circuit court or this court lacking a final judgment or a petition for an intermediate appeal as was done in the Hoffman appeal.

We glean three essential issues from the briefs of the parties. First, we must determine whether the defendant must make any showing beyond the expiration of the 180–day time period stated in the statute. Secondly, we must define what constitutes "good cause" for delay, which would toll the running of the statutory period. Finally, we must determine if a dismissal for violation of the statute is a dismissal with prejudice.

SDCL 23A–44–5.1 creates statutory rights in addition to a defendant's constitutional right to a speedy trial. By way of that statute, we have affirmatively stated that defendant's right to a disposition of his criminal case within 180 days unless good cause can be shown for the delay. SDCL 23A–44–5.1 is a statutory and not constitutional requirement, thus it stands on a different legal footing than constitutional claims and requires an analysis separate and distinct from constitutional claims. *See United States v. Wentland*, 582 F.2d 1022 (5th Cir.1978), *cert. denied*, 439 U.S. 1133, 99 S.Ct. 1056, 59 L.Ed.2d 96 (1979); *People v. Farmer*, 339 N.W.2d 218 (Mich. 1983); *State ex rel. Rabe v. Ferris*, 97 Wis.2d 63, 293 N.W.2d 151 (1980). We have recently underscored these fundamental differences in cases involving habeas corpus relief. *Goodroad v. Solem*, 406 N.W.2d 141 (S.D.1987).

■ We believe SDCL 23A–44–5.1 is clear and unambiguous on its face. It requires a disposition of criminal matters within 180 days lacking good cause for delay. We do not deem the statute to be synonymous with the constitutional requirement for a speedy trial, thus the four-factor test used to determine whether a defendant has received a speedy trial set forth in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), is inapplicable to an analysis of an alleged violation of SDCL 23A–44–5.1. Since the trial court utilized the *Barker* factors, we find that it committed reversible error. We hold that once a defendant has established the running of the 180–day time period he has established a prima facie case for dismissal. See also *State v. Holiday*, 335 N.W.2d 332 (S.D.1983), wherein this court simply counted days to determine if a preliminary hearing was held within the required time period.

■ The 180–day period may be tolled if State moves for and can show good cause for delay. To foster certainty and finality, we hold that a motion for a good cause

delay must be filed prior to the expiration of the 180–day period.* We recognize, however, that SDCL 23A–44–5.1 does not on its face require State to file a motion for good cause delay prior to the expiration of the 180–day period. We therefore determine that State may have thirty days after the filing of this decision to file motions for good cause delay on pending cases that have already exceeded the 180–day period.

■ The parties also disagree as to what should constitute good cause for delay under the statute. The main reason for the delay, according to State, was that the court docket was very congested and the system could not handle the volume of cases. We agree that the docket in the second circuit was congested. Indeed, docket congestion was a factor ultimately leading to the adoption of SDCL 23A–44–5.-1. We agree with the Michigan Appellate Court and hold that "[e]xcept for short-term docket congestion caused by extraordinary circumstances, delay caused by docket congestion is attributable to the prosecution." *People v. Smith*, 143 Mich. App. 122, 127, 371 N.W.2d 496, 499 (1985). The Supreme Court of California in *Rhinehart v. Santa Barbara-Goreta Mun. Ct.*, 35 Cal.3d 772, 200 Cal.Rptr. 916, 677 P.2d 1206 (1984), also held that court congestion does not constitute good cause for delay under a 180–day statute. The California court also agreed that the burden of showing good cause is on the prosecution. *Id.* at 781, 200 Cal.Rptr. at 922, 677 P.2d at 1212.

Nor are we sympathic to State's claim that SDCL 23A–44–5.1 should have been phased in over a period of two years. We do not believe that such a delay was warranted, especially in view of the fact that the proposed rule was announced in the November, 1984, State Bar Newsletter and that public hearings were held prior to the adoption of the 180–day rule. Furthermore, the rule was adopted by this court on January 7, 1985, nearly six months in advance of the July 1, 1985, effective date.

---

\* Thus, if a defendant applies to the court for any delay for whatever purpose, State should also apply to the court for a determination to what

extent any delay granted should toll the running of the statutory period.

In addition to this initial six-month period, State had an additional 180 days in which to dispose of the pending criminal actions. Considering the flexibility of our Unified Judicial System we believe that this nine-month period provided a sufficient transitional period.

■ State also claims that SDCL 23A–44–5.1 should not apply to cases where the initial appearance took place prior to July 1, 1985. While a strict reading of the statute arguably supports this claim, it would be absurd to interpret the statute as allowing that result. We hold that in pending cases where the defendant initially appeared prior to July 1, 1985, the 180–day period began running on July 1, 1985.

■ Finally, we address the issue of whether the dismissal required by SDCL 23A–44–5.1 should be a dismissal with prejudice or simply a dismissal leaving open the possibility of a new charge. Allowing State to simply recharge offenders after dismissal under SDCL 23A–44–5.1 would totally defeat the purpose behind the rule. In addition, a new charge would once again place burdens on the defendant which may include the retention of new legal counsel, the posting of a new bond, and spending additional time in jail, each of which would involve new expense or hardship to the defendant. *Hilbert v. Dooling*, 476 F.2d 355 (2d Cir.1973).

We reverse and remand to the trial court with instructions to grant the motions to dismiss with prejudice under SDCL 23A–44–5.1. We further determine that this decision is prospective only and shall be applicable only to defendants whose appeals we have considered in this proceeding and such other defendants whose appeals have been filed prior to the entry of this decision.

HERTZ, Circuit Judge, concurs.

WUEST, C.J., concurs specially.

HENDERSON, J., concurs in part and dissents in part.

* Note the first four words of SDCL 23A–44–5.1. It states, *inter alia:* "The *prosecution* shall dispose...." (Emphasis supplied.) Colorado will

MILLER, J., dissents.

HERTZ, Circuit Judge, sitting for SABERS, J., disqualified.

WUEST, Chief Justice (concurring specially).

I concur with the majority opinion and take judicial notice the so-called congestion was a result of dilatory practices which have now been corrected. We adopted the 180–day rule to prevent delay, procrastinations, and dilatory practices, and we intend to enforce it. Justice Henderson makes a strong argument against the "grace period of thirty days." If our ruling applied only to the situation in the second circuit, I would probably support his position. But, it does not—it applies to the whole State. We have now made it clear the motions for good cause delay must be made prior to the expiration of the 180 days. Even with the 30–day grace period, the State must show good cause.

HENDERSON, Justice (concurring in part, dissenting in part).

This decision flows with the spirit of Supreme Court Rule 85–4, now codified as SDCL 23A–44–5.1, with but one salient exception, which is elucidated below.

Although I agree with its basic rationale, the following sentence, to my way of thinking, debauches its core holding:

> We therefore determine that State may have thirty days after the filing of this decision to file motions for good cause delay on pending cases that have already exceeded the 180–day period.

It is beyond my ken to arrive at a final conclusion, such as that expressed in the majority opinion, when the rationale and all of the authorities supporting absolute and complete discharge run contrary to such a conclusion. It is the duty of the prosecution and the courts, not the defendant, to dispose of a case. *See United States v. Didier*, 542 F.2d 1182, 1187 (2d Cir.1976).* The State or the Commonwealth must come

not permit laxity under its special court rule. *See People v. Deason*, 670 P.2d 792 (Colo.1983).

forward and request an extension of time *before* the time under the rule has expired. *See Commonwealth v. McLaughlin,* 338 Pa.Super. 615, 488 A.2d 63 (1985). The entire purpose behind creating this Supreme Court Rule in South Dakota was to ensure that cases be *disposed of* within 180 days unless the prosecution comes forward with a showing of good cause. Why, then, does the majority opinion permit and tolerate six months of delay by now giving the State thirty days to whitewash its neglect and, therefore, self destruct the very core holding of the decision? These criminal cases are mandated to be *disposed of* within 180 days or be dismissed unless good cause is shown. There is no grace period of thirty days. As the majority opinion expresses, the rule "is clear and unambiguous on its face." Let us examine how another state looks at its special court rule:

> Although the time for trial under the constitutional speedy trial rule is determined on a case-by-case basis, this court has adopted a special court rule requiring dismissal when certain time limits are not met in order to provide a degree of specificity not provided by that case-by-case analysis. The State must act not only in conformity with the provisions of the constitution, but also within the strictures of [the special court rule].

*State v. Edwards,* 94 Wash.2d 208, 213, 616 P.2d 620, 623 (1980). In *State v. Darden,* 99 Wash.2d 675, 663 P.2d 1352 (1983), the Supreme Court of Washington held that *Edwards* should be applied retroactively because it was not a new rule, but only an interpretation of an already existing rule. A grace period should not be applied, at this time, enabling the State to "get its feet on the ground," so to speak, because it has been confronted with a loss at the appellate level. If the 180–day rule has not been followed, in accordance with the core ruling of the majority opinion, the rule has no teeth. Allowing a recharge, via a thirty-day grace period, would make the rule counterproductive and thus reward a failure to comply with the rule.

Via Exhibit A, received in evidence, Circuit Judge Gene Paul Kean warned the Minnehaha County State's Attorney's Office of the 180–day rule which letter is dated September 5, 1985. This letter forewarned a storm cloud, for it reflected, *inter alia,* as follows:

> During the month of August, I was working with Tom Wright of your office and Bill Daugherty in an attempt to reduce the misdemeanor cases that appear to be piling up in the Magistrate's Division. We began with seventy-nine cases. By setting these cases for trial, we were able to dispose of most but not all of them. There is a matter that should still be of some concern, however.
>
> You are undoudtedly [sic] aware of the 180 [day] rule which requires the disposal of any criminal matter within that period unless good cause is shown. This rule became effective on July 1, 1985. A goodly number of the cases in the August trial list were already older than 180 days. While the rule does not begin to work or mark time on a case until July 1, 1985, the age of these cases should be some indication of a potential problem.
>
> I am not sure why these backlogs continue to appear; but, the problem does seem to be an annual one in this circuit. I would like to suggest you review this matter with your staff. If you need trial judges, either the local circuit judges would help or judges could be brought in from another circuit.

During this storm-brewing time frame, the magistrates in this circuit had a policy of one "free" reset for the state in misdemeanor cases. Statistics reveal, in this record, that in a six-month period from July 1, 1985, to January 1, 1986, the circuit court judges disposed of ten misdemeanor cases which were transferred to their respective court from magistrate court but transferred more than fifty misdemeanor cases from the circuit court back to the magistrate level. It is noted that during this same six-month period, there were approximately twelve trial dates of magistrate court calendar time which were left open on Friday afternoons. Per the transcript on the Motion to Dismiss before Judge Hoyt on April 23–25, 1986, the Circuit Court Administrator offered case load

lists to the State's Attorney's Office but the offer was declined. Six cases were tried to a jury in magistrate court from July 1, 1985 to October 31, 1985, and there were no cases tried in magistrate court during the months of November and December 1985. A tremendous backlog of cases developed, particularly with respect to driving while under the influence of alcohol, and one Deputy State's Attorney was assigned the primary responsibility of handling all of these cases. After motions to dismiss were filed, there began a flurry of activity to take care of the backlog. Examples: magistrates adopted a new "reset policy"; a committee was formed to try to cure future trial problems; meetings took place between the State's Attorney's Office and court personnel to discuss scheduling problems. Candidly, the motions to dismiss triggered a heightened effort to dispose of cases and it is indeed unfortunate that the warning by Circuit Judge Gene Paul Kean was not harkened unto at an earlier and unperiled time. It was after the peril that the meetings and new procedures were held and adopted. In my opinion, the State was warned and the time ran, under this rule, on the State before it began to make efforts to remedy this situation. These efforts to dispose of the increasing backlog truly reflect that "the system" had the ability to cope with the problem earlier had it only, with due diligence and gusto, so acted. Thus, for me to join the majority opinion in a thirty-day "grace period" runs counter to the facts and the purpose for which the rule was established.

MILLER, Justice (dissenting).

I dissent. I would affirm the trial court's application of the Barker v. Wingo criteria. Additionally, because of the far-reaching, widespread possible ramifications of the majority decision, I must make the following points:

### 1.

The characterization of SDCL 23A–44–5.1 by the majority as a statutory provision is somewhat misleading. It is a procedural rule adopted by this Court as Rule 85–4 (the so-called "180–day rule"). In holding that dismissal under this rule is "with prej-

udice," the majority has, in essence, partially, if not fully, repealed SDCL ch. 23A–42, wherein the legislature created statutes of limitations in criminal actions.

### 2.

To hold that the motion must be filed before the expiration of the 180 days is too strict and harsh. If good cause for delay truly exists, why can it not be presented to the court within a reasonable time after the expiration of the 180 days, with timeliness to be considered along with the other factors applying the usual tests for due diligence, excusable neglect and reasonability? The majority's draconian interpretation will, I fear, come back to haunt this Court. I envision the day that some murderer, rapist, or child molester will be discharged under the 180–day rule because of some clerical error or bona fide, good cause oversight, leaving the People (who also have rights in our society) with no remedy in the courts. It is truly fortunate that the cases involved here are principally DWIs and not serious felony cases with injured or dead victims.

### 3.

We must remember that this rule was principally passed to address and respond to the unfortunate and ineffective scheduling practices of the magistrate court in Sioux Falls (which, as pointed out by the Chief Justice, have apparently been now corrected). Little, if any, blame for the delay in these cases can be attributed to the prosecutor's office, yet they have the burden under the rule and the sanctions under the majority opinion. This is truly unfortunate, especially since they have little or no input into the scheduling practices of the courts.

The scheduling practices of the magistrate court, in addition to other obvious frailties in causing and extending these delays, laid prey to defendants and defense counsel who recognize that delay is one of the best defenses and therefore attempt to use the system to their own benefit by causing or perpetuating delays. We should recognize that there are two sides to every controversy and be realistic in our application of such an important issue. Rather,

the majority goes beyond the already strict rule and pronounces a requirement that is unnecessary and unreasonable.