**STATE of South Dakota, Appellee,**

v.

**Laurie SHILVOCK–HAVIRD, Appellant.**

**No. 17220.**

Supreme Court of South Dakota.

Argued March 18, 1991.

Decided June 26, 1991.

Rehearing Denied July 29, 1991.

Roger A. Tellinghuisen, Atty. Gen., Scott Bogue, Asst. Atty. Gen., Pierre, for appellee; Ethan Schmidt, Pierre, on the brief.

David A. Bradsky, Bradsky & Bradsky, Rapid City, for appellant.

ERICKSON, Circuit Judge.

Laurie Shilvock–Havird (defendant) was convicted of two counts of use of false instrument to obtain public funds (Class 1 misdemeanors); two counts of theft (Class 1 misdemeanors); twenty-eight counts of perjury (Class 5 felonies); one count of

attempted theft (Class 5 felony); twenty-six counts of use of false instrument to obtain funds (Class 4 felonies); and twenty-five counts of theft (Class 4 felonies).

## FACTS

Defendant was a court reporter, employed by the state and assigned to the magistrates in the Seventh Judicial Circuit. The Department of Legislative Audit conducted an audit of defendant's vouchers for indigent criminal transcripts billed to Pennington, Custer and Fall River counties from November 1986 through February 1989. As a result of that audit, a Pennington County grand jury indicted defendant on eighty-four counts of criminal misconduct.

Defendant's issues on appeal are procedural in nature. Defendant does not appeal any factual issues which form the basis for her convictions.

## ISSUE I

WHAT IS THE EFFECT OF A MISTRIAL ON THE COMPUTATION OF THE 180–DAYS WITHIN WHICH PROSECUTORS MUST DISPOSE OF ALL CRIMINAL CASES?

■ Defendant was arraigned on the indictment on September 6, 1989. The 180–day deadline mandated by SDCL 23A–44–5.1 was March 4, 1990. The first trial commenced on January 8, 1990. It ended five trial days later on January 16, 1990, after the jury informed the trial judge that they were deadlocked.

On January 23, 1990, the trial court, by letter, suggested to counsel a re-trial date of either March 5, 1990, or March 26, 1990. Shortly thereafter, in an unrecorded telephone conference, March 26, 1990 was set as the trial date. The trial was eventually reset and began on May 14, 1990.

The state did not file a motion to extend the 180–day period prior to March 5, 1990, as mandated in *State v. Hoffman*, 409 N.W.2d 373 (S.D.1987). On March 7, 1990, defendant filed a motion to dismiss, which the state resisted. After a hearing, the trial court specifically found:

(1) None of the cases decided to that point had dealt with a case which had been tried, but, due to a mistrial, was not disposed of in 180–days.

(2) The state brought the case to trial well within the 180–days. But for the jury being unable to reach a verdict on all counts, the case would have been disposed of at that time.

(3) Both parties had at all times been ready, willing and able to dispose of the case.

(4) The trial court was unable to retry a five (5) day trial prior to March 5, 1990, because of [the trial court's] trial schedule.

The trial judge then concluded:

(1) The 180–day rule was adopted to prevent delay, procrastinations, and dilatory tactics.

(2) None of the public policy considerations which support the 180–day rule were present.

(3) [Defendant's] conduct, in which she, through counsel, consented to a March 26, 1990 trial date, waived her right to trial within 180 days.

The 180–day rule in effect at that time required "disposal" of the case by "plea of guilty or nolo contendere, trial or dismissal" within 180 days of the first appearance. SDCL 23A–44–5.1.

Defendant argues that the 180–day rule is absolute and that absent a motion for good cause delay filed by the prosecution prior to the expiration of the 180 days, *Hoffman, supra,* requires dismissal. The *Hoffman* motion filing requirement is not absolute. In *State v. Tiedeman,* 433 N.W.2d 237 (S.D.1988), this court found that in a case where there is an issue of "first impression" before the court, the *Hoffman* motion filing requirement is not controlling.

*Tiedeman* dealt with the issue of the effect of a dismissal and subsequent refiling of criminal charges on the running of the 180–day period. In this instance, we deal with the issue of the effect of a mistrial and subsequent re-trial on the running of the 180–day period. SDCL 23A–44–5.1

is silent on this issue.[1] As in *Tiedeman*, this is an issue of first impression in this court. Therefore, the motion filing requirement is not dispositive of this issue.

■ In reviewing the findings of the trial court concerning reasons for "good cause delay," the clearly erroneous standard of review applies. *State v. Kerkhove*, 423 N.W.2d 160 (S.D.1988). All of the trial court's findings, except on the issue of waiver, are clearly supported by the evidence in this case. The failure to "dispose" of the case within 180 days was not caused by procrastination or dilatory tactics, but rather the inability of a jury to come to an ultimate decision. Then a combination of factors, including the trial court's schedule of other trials and the complexity of the case, which required at least a five-day time span for re-trial, caused the second trial to be postponed beyond the 180 days.

This was a complex case involving over two hundred exhibits and thirty witnesses. All parties knew the first trial took five days to complete. Under these circumstances, the 117–day delay between the mistrial and re-trial was reasonable and for good cause.

■ Additionally, the trial court found that defendant waived the 180–day requirement. The grounds were that in an unrecorded, and therefore, non-reviewable telephone conference with defense counsel, the court and the prosecution, the parties agreed upon a March 26, 1990, trial date. This matter is further complicated by the fact that the defense had informed the court that it was intending to file a motion for change of venue. That motion was apparently abandoned because the defense could not choose the county to be substituted. For a time, this caused the trial court to tentatively reserve time and court space in at least two separate counties pending the filing of this motion.

There is nothing to indicate that the defendant was a party to, or was aware of the unrecorded discussion concerning trial dates. Additionally, the record does not indicate that the 180–day rule was ever discussed or considered prior to the filing of the motion to dismiss on March 7, 1990. As in *State v. Black Feather*, 266 N.W.2d 563 (S.D.1978), any delay "caused by actions of counsel taken without the concurrence of the defendant" cannot be considered as a waiver by the defendant. Therefore, this record does not support the finding of a waiver of the 180–day rule.

While there was not a valid waiver of the 180–day rule, in light of all the other facts and circumstances, the delay between mistrial and re-trial was reasonable and for good cause. Therefore, the trial court is affirmed on this issue.

### ISSUES II and III

IS PERJURY, AS SET FORTH IN SDCL 4–9–4, A SPECIFIC INTENT CRIME?

IS THE CRIME OF "USE OF FALSE INSTRUMENT TO OBTAIN PUBLIC FUNDS," SDCL 4–9–5, A SPECIFIC INTENT CRIME?

Defendant was charged with violations of SDCL 4–9–4 "Declaration in lieu of verification or oath—False statement as perjury," and SDCL 4–9–5, "False instrument to obtain public funds as theft." Defendant contends these are specific intent crimes. The trial court found otherwise, and instructed the jury that they were general intent crimes.

■ Whether or not a crime is a "general intent" or "specific intent" crime depends upon its legislative enactment. "The legislature may forbid the doing of an act without regard to the intent or knowledge of the doer." *State v. Nagel*, 279 N.W.2d 911, 915 (S.D.1979); *State v. Rash*, 294 N.W.2d 416, 418 (S.D.1980). Additionally, the legislature may make a crime a specific intent crime under one set of circumstances, and a general intent crime under a different set of circumstances. *United States v. Lardieri*, 497 F.2d 317 (1974), *on*

---

**1.** On February 26, 1991, the Supreme Court repealed and reenacted SDCL 23A–44–5.1, effective July 1, 1991, which specifically addressed this issue as follows:

If such defendant is to be tried again following a mistrial, ... such period [180 days] shall commence to run from the date of the mistrial,....

*rehearing,* 506 F.2d 319 (3rd Cir.1974); *United States v. Stassi,* 443 F.Supp. 661 (D.C.N.J.1977).

(a) *SDCL 4–9–4 (Perjury).* SDCL 4–9–4 states in pertinent part:

> Whenever any law of this state requires a claim or account against the state, or any of its political subdivisions ... to be verified or sworn to ... prior to presentation or payment, it shall be sufficient compliance with such law if the claimant ... shall sign a statement printed or written thereon in the following form: "I declare and affirm under the penalties of perjury that this claim has been examined by me, and to the best of my knowledge and belief, is in all things true and correct." *Any person who shall sign a claim or account bearing the statement written or printed thereon as provided for in this section, knowing the same to be false or untrue, in whole or in part, shall be guilty of perjury.* (emphasis provided).

■ Defendant argues that SDCL 4–9–4 must be read in conjunction with SDCL 22–29–1, the general perjury statute, and that the phrase "intentionally and contrary to such oath" found in SDCL 22–29–1 makes perjury a specific intent crime.

Defendant was not charged under SDCL 22–29–1. Nothing in SDCL 4–9–4 indicates that it was the legislature's intent that it must be read in conjunction with SDCL 22–29–1. SDCL 4–9–4 sets forth a separate and distinct method of committing perjury.

This court over the past several years has repeatedly analyzed the specific intent/general intent dichotomy. The use of the terms "intentionally" or "knowingly" merely designate that the culpability required is something more than negligence or recklessness. *State v. Balint,* 426 N.W.2d 316 (S.D.1988); *State v. Huber,* 356 N.W.2d 468 (S.D.1984); *State v. Barrientos, III,* 444 N.W.2d 374 (S.D.1989); *State v. Bailey,* 464 N.W.2d 626 (S.D.1991).

SDCL 4–9–4 merely requires that the defendant know of the falsity of the statement. It does not require a mental state beyond that. For example, there is no re-quirement that the statement be made with intent to defraud or with intent to deceive.

■ (b) *SDCL 4–9–5 (Theft).* Defendant was charged under SDCL 4–9–5, "False instrument to obtain public funds as theft." Defendant argues that the language of SDCL 22–30A–1 which require a finding of "an intent to deprive the owner thereof" must be considered.

SDCL 4–9–5 states in pertinent part:

> Any person ... who shall knowingly obtain or attempt to obtain any public moneys or funds from the state of South Dakota, or any of its political subdivisions, by means or use of any false affidavit or other instrument, where such affidavit or instrument is the basis for the claim for payment of public moneys or public funds, shall be guilty of theft.

The phrase "shall be guilty of theft" does not, in and of itself, incorporate the general elements of theft as defined in SDCL 22–30A–1. Therefore, the language of SDCL 4–9–5 is controlling. As in the case of "false statement as perjury," there is nothing in SDCL 4–9–5 which would indicate that the legislature considered theft by this method to be a specific intent crime.

The crimes of theft by use of false instrument to obtain public funds and false statements as perjury, are general intent crimes. Therefore, the trial court is affirmed on issues II and III.

ISSUE IV

IS IT PERMISSIBLE FOR A DEFENDANT TO BE CONVICTED ON TWO SEPARATE COUNTS CHARGING THE SAME OFFENSE, MERELY DESCRIBING THE OFFENSE IN DIFFERENT WAYS?

■ Defendant was charged with twenty-eight counts of use of false instrument to obtain public funds (SDCL 4–9–5); twenty-seven counts of theft (SDCL 22–30A–1); and one count of attempted theft (SDCL 22–30A–1 and 22–4–1). Defendant contends these charges are duplicative because SDCL 22–30A–1 encompasses all offenses where the property of one person is unlaw-

fully taken, which would include use of a false instrument.

> SDCL 23A–6–23 states in pertinent part: Two or more offenses may be charged in the same indictment ... in separate counts for each offense, if the offenses charged; ... are of the same or similar character or are based on the same act or transaction....

In this case, each act which culminated in the submission of a voucher was charged as both theft (SDCL 22–30A–1) and use of false instrument to obtain public funds (SDCL 4–9–5). The language of SDCL 4–9–5 states that violation of this statute constitutes theft. In each case, there was only one act of theft, which resulted in two separate charges, and two separate convictions.

Defendant moved to consolidate the counts contained in the indictment. The trial court denied that motion. Defendant was ultimately convicted and sentenced to concurrent sentences on all counts.

In *State v. Teutsch*, 80 S.D. 462, 126 N.W.2d 112, 115–116 (1964), this court held:

> The same act or transaction may constitute two distinct offenses and justify conviction on both and separate sentences to run consecutively if each offense as defined by statute requires the proof of some fact or element not required to establish the other....
>
> It is permissible ... to charge in separate counts the commission of the same offense in different ways in order to meet the evidence which may be adduced. If a defendant is convicted on two counts, relating to a single offense, a general sentence may be imposed.... (citations omitted).

The *Teutsch* doctrine remains viable. *State v. Baker*, 440 N.W.2d 284 (S.D.1989). In this case, defendant was charged with theft accomplished under two different sets of circumstances. Each count describes a different method of accomplishing that offense, but there was only one offense of theft committed. *Baker, supra.* As in *Teutsch*, defendant was convicted of two counts relating to a single offense; therefore, a general sentence may be imposed.

On June 29, 1990, the trial court entered its concurrent sentences. While all sentences were concurrent, a specific sentence was set forth for each count. The question remains whether concurrent sentences constitute a "general sentence?"

Two concurrent sentences (even when their terms are exactly the same) constitute two punishments for one offense. A "general sentence" is one sentence common to two or more convictions for the commission of a single offense. For example perjury and theft are two distinct offenses, and justify separate convictions and sentences. However, theft and false instruments to obtain public funds as theft merely describe separate ways to accomplish the single offense of theft. While separate convictions are proper, only one common sentence may be imposed. For example, the sentence could read "that for Count 80, Use of False Instrument to Obtain Public Funds, and Count 81, Theft, the Defendant serve ten years...."

Therefore, while the trial court is affirmed in its denial of the motion to consolidate, the sentences are reversed and the matter is remanded for sentencing in accordance with this opinion.

## ISSUES V AND VI

WHETHER THE SENTENCE IMPOSED CONSTITUTES AN ABUSE OF DISCRETION AND CRUEL AND UNUSUAL PUNISHMENT?

WHETHER THE TRIAL COURT PROPERLY ESTABLISHED THE AMOUNT OF RESTITUTION?

Defendant's remaining two issues also relate to the trial court's sentence. Therefore, for the assistance of the trial court, those issues will be dealt with.

(a) *Abuse of discretion/cruel and unusual punishment.* Defendant was convicted of eighty-four counts of criminal misconduct. She was sentenced to thirty days in the Pennington County jail on the convictions for two counts of use of false instrument to obtain public funds and two counts of theft (Class I misdemeanors),

each to be served concurrently. For the convictions on twenty-eight counts of perjury, she was sentenced to concurrent four year terms in the state penitentiary. Defendant was ordered to serve concurrent ten year terms in the penitentiary on the convictions for twenty-six counts of use of false instrument to obtain public funds, (Class 4 felonies). For the attempted theft conviction (a Class 5 felony), she was sentenced to four years in the penitentiary. And for the convictions for twenty-five counts of theft (Class 4 felonies), defendant was ordered to serve concurrent ten year terms in the penitentiary.[2]

It was further ordered that six years of the ten year terms imposed would be suspended upon certain conditions, including restitution of moneys taken, costs of the audit, and certain costs of the prosecution.

■■■ Defendant argues that these sentences are an abuse of discretion and constitute cruel and unusual punishment. There is a two-fold test to our review of a sentence to determine whether it is so constitutionally offensive as to shock the conscience. First, is the punishment so excessive or so cruel "as to meet the disapproval and condemnation of the conscience and reason of men generally." And second, whether the punishment is so excessive or so cruel as to shock the collective conscience of this court. *State v. Reed*, 451 N.W.2d 409 (S.D.1990); *State v. Phipps*, 318 N.W.2d 128 (S.D.1982).

Defendant was employed in a position of public trust. She used that position to commit these crimes. While she was a first offender, these offenses formed a pattern of criminal conduct over a period of almost two and one-half years from which she derived a substantial income. Her actions were intentional, as opposed to reckless or negligent. Under both tests, this sentence does not shock the conscience of men generally, nor of this court.

On appeal this court is referred to three other cases involving theft which appear to be an attempt at arguing that this sentence is disproportionate. First, this issue must be raised at the trial level. *State v. Groethe*, 439 N.W.2d 554 (S.D.1989). Second, this showing provides an inadequate record to probe this contention. As in *State v. Janssen*, 371 N.W.2d 353, 357 (S.D.1985) (Henderson, Justice, concurring in result):

> There are no statistics, criteria, history of cases, studies, or court records from which this Court could make an intelligent appellate review as to ... proportionality under the Eighth Amendment.

(b) *Restitution.* Defendant contests the amount of restitution ordered. This sentence was imposed prior to this court's decision in *State v. Tuttle*, 460 N.W.2d 157 (S.D.1990), where it was mandated that a due process hearing on restitution be held.

The state argues that a review by court services satisfies the *Tuttle* requirements; the defendant had an opportunity to be heard at sentencing; and that restitution in this case is prospective in nature, and if made, it is done so on a voluntary basis, therefore, no hearing was necessary.

■■■ First, a review by court services does not satisfy due process requirements. Court services' function is to assist the court, not act as an independent tribunal.

While defendant did have an opportunity to be heard at the time of sentencing, and did indicate a willingness to pay the taxpayers back, nothing except court services' report was submitted on the issue of the amount of restitution. Defendant offered information, which if believed, would substantially reduce the amount of restitution. That matter should be formally reviewed.

---

**2.** On the four misdemeanor convictions, for two counts of theft and two counts of use of false instrument to obtain public funds, the thirty day jail sentences were run concurrent to the penitentiary sentences.

> [T]here is a limitation on a sentencing court's authority to order concurrent service of multiple sentences.... "[T]wo sentences, in order to run concurrently, must be sentences to the same place of confinement." "A sentence in the penitentiary and one ... in the county jail cannot be served out concurrently." (citations omitted).
> *State v. Wooley*, 461 N.W.2d 117, 120–121 (S.D.1990).

Defendant was sentenced to the penitentiary. Six of the ten years were to be suspended if the defendant agreed to make restitution. "SDCL 23A–27–19 (suspended\sentences) merely gives a sentencing judge the authority to have the conditions he places on a suspended sentence enforced by the Board of Charities[.]" *Turo v. Solem*, 427 N.W.2d 843, 846 (S.D.1988). Therefore, it was not prospective in nature. It is for the Board of Pardons and Paroles to establish and enforce a restitution plan. SDCL 23A–28–3, *State v. Wolff*, 438 N.W.2d 199 (S.D.1989). However, prior to defendant's delivery to the penitentiary, the circuit court has the jurisdiction, if it so desires, to formulate a plan of restitution. *Wolff, supra.* In this instance, the circuit court chose to establish the amount of restitution. Therefore, a due process hearing was necessary.

Neither the state nor defendant ordered the trial to be transcribed. Therefore, we are unable to determine if the amount of restitution was established at the trial to such a degree that a separate hearing would be unwarranted. If the restitution hearing is held in conjunction with the sentencing hearing, the defendant must know this sufficiently prior to the hearing to be able to contest the issues. The record is insufficient to allow that determination. Therefore, defendant has a right to a restitution hearing.

## CONCLUSION

On the issues of sentencing and restitution, this case is reversed and remanded to the trial court. On all other issues the trial court is affirmed.

MILLER, C.J., concurs.

HENDERSON, J., concurs in part and specially concurs in part.

SABERS, J., specially concurs in part.

AMUNDSON, J., dissents.

ERICKSON, Circuit Judge, for WUEST, J., disqualified.

HENDERSON, Justice (concurring in part; specially concurring in part).

I concur with the dissertation on issues 1, 2 and 3.

I concur on issue 4 which holds that the "sentences are reversed and the matter is remanded for sentencing in accordance with this opinion." Therefore, under (a), issues 5 and 6, the trial court must consider the sentences anew to the extent of determining a proper sentence. It is anticipatory, in the opinion of this writer, to pass upon the abuse of discretion/cruel and unusual punishment aspect of this case, when the sentence is being reversed. Judicially, it is difficult, if not impossible, to take a position on an ultimate sentence until it is adjudicated.

In connection with the sentencing, a record should be made below concerning any future sentence so that a *Helm/Weiker* analysis may be applied by the trial court. Such a record would permit this Court to review a sentence based upon an adequate record. *State v. Janssen*, 371 N.W.2d 353 (S.D.1985). A disproportionality analysis cannot be raised at the appellate court level unless it is raised below with case studies, statistics and data.

I concur in the entire dissertation under (b), issues 5 and 6, restitution.

SABERS, Justice (concurring specially).

I write specially to state my agreement with the remand for resentencing on 26 counts of felony theft and 26 counts of felony use of false instrument to obtain public funds. I agree that 26 common sentences may be imposed on these convictions, but not 52. At the rate used by the trial court, this could still amount to 260 years in 10–year increments served concurrently.

Although this sentence may not technically constitute "cruel and unusual punishment" in violation of the constitution, it sure seems to, especially when one compares the plight of this lowly court reporter with that of attorney John Simpson, 467 N.W.2d 921 (S.D.1991), who failed to pay South Dakota state sales tax and federal income tax for a period of 23 years and

received a suspended imposition of sentence with restitution.

AMUNDSON, Justice (dissenting).

The majority opinion disregards settled law of this state on the 180–day rule.

In *State v. Hoffman*, 409 N.W.2d 373 (S.D.1987), this court specifically held that once a defendant establishes that the 180–day time period has expired, a prima facie case for dismissal has been made. Further, in order to toll or extend the 180–day period, State must file a motion for good cause delay prior to the running of the 180–day period. *Id.* at 375. This is mandatory language. Even when considering such a motion for good cause, the trial courts have been admonished not to give a "carte blanche type of permission" to the moving party. *See State v. Kerkhove*, 423 N.W.2d 160 (S.D.1988).

In this case, there is no dispute that the first trial ended in a mistrial. A mistrial is equivalent to no trial. *People v. Jamerson*, 196 Colo. 63, 580 P.2d 805 (1978). After a mistrial, the defendant remains in the same position as he/she was in prior to the mistrial. *United States v. Gladding*, 265 F.Supp. 850 (D.C.N.Y.1966). In this case, defendant was still facing the same charges for which she was indicted on August 17, 1989, upon which she made her first appearance on September 6, 1989. After a mistrial has been declared, the case can be retried, dismissed, or a plea can be negotiated to a different charge. The decision of which of those options to elect is strictly in the hands of State. State, in this case, elected to retry the defendant. The scheduling is the responsibility of the attorneys and court officers. *State v. Ven Osdel*, 462 N.W.2d 890 (S.D.1990).

Under the facts of this particular case, two simple questions need be answered. First, was the defendant's case disposed of within 180 days from the date of defendant's first appearance before a judicial officer? No. Second, did State file a motion for good cause delay prior to the expiration of the 180–day time period. No. With these undisputed facts, I cannot in good conscience join the majority.

The majority opinion, by its holding on Issue 1, is giving retrospective application to the reenactment of the new 180–day rule adopted by this court prior to its effective date of July 1, 1991. The decisions cited above are clear and unambiguous in their directives and certainly put State on notice that it should be able to count to 180 commencing with the date of a defendant's first appearance, or file the appropriate motion. *State v. Head*, 469 N.W.2d 585 (S.D.1991).

Finally, I cannot state that the findings and conclusions made by the trial court after the late request of State to find good cause for this delay, are in error except for the fact that this ruling was made on March 7, 1990. The request was tardy and the court was without authority to entertain such a motion due to the dilatory and ineffective scheduling of the required motion for delay. Such are the practices this statute was intended to eradicate. As stated in the special writing of Justice Henderson in *State v. Cross*, 468 N.W.2d 419, 422 (S.D.1991) (Henderson, J., specially concurring), "the 'old 180–day rule' has served this state very well" since its adoption. Justice Henderson further wrote:

Lastly, I wish to express that in all of my reading on speedy trial rules, the reoccurring principle is set forth that it is the state's responsibility to prosecute cases; it is not the defendant's responsibility, nor his counsel, to prosecute the case.

*Id.* at 422 (Henderson, J., specially concurring) (citations omitted).

Nor should it be the duty of the defendant or her counsel to advise the court or the prosecutor that a trial date agreed to is beyond the 180–day time period. The tolling of this time constraint can easily be addressed by simply filing the required motion with the trial court in a timely manner. As previously stated, it was not filed in this case. Therefore, I would reverse.