STATE of South Dakota, Plaintiff
and Appellee,

v.

Robert Allen WOLFF, Defendant
and Appellant.

No. 16097.

Supreme Court of South Dakota.

Considered on Briefs Nov. 30, 1988.

Decided March 22, 1989.

Richard D. Coit, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Roger A. Tellinghuisen, Atty. Gen., Pierre, on the brief.

Frank A. Bettmann of Bettman & Feehan, P.C., Rapid City, for defendant and appellant.

HENDERSON, Justice.

## PROCEDURAL HISTORY/ISSUES

This is a case of first impression in South Dakota.

For purposes of clarity and convenience, we shall refer to Defendant/Appellant Robert Allen Wolff as Wolff. He was originally charged with two counts of attempted removal of property subject to security interest (SDCL 44–1–12) in Pennington County. The property described in the complaint was an Admiral freezer and a Hitachi television set. On October 29, 1987, three days after the initial complaint was filed, an amended complaint was filed charging Wolff with two counts of theft by embezzlement of property received in trust and one count of grand theft. A three-

count criminal Information, alleging two counts of theft by embezzlement of property received in trust and one count of grand theft, and a Part II Information, alleging that Wolff was a habitual offender with four prior felony convictions, were filed on November 25, 1987. On December 21, 1987, an amended Information Part II was filed, alleging only two prior felonies. The prosecutor dismissed Counts II and III of the criminal Information and separate NSF check charges pursuant to a plea bargain. Wolff was convicted of theft by embezzlement of property received in trust and adjudicated an habitual offender. The trial court sentenced Wolff to thirteen years in the State Penitentiary, and ordered him to pay $15,550.40 in restitution to his victims (exact amount of NSF checks issued to fourteen different businesses). Wolff's appeal is from the judgment and sentence, specifically challenging that portion of his sentence requiring restitution in the amount of $15,550.40. He alleges four trial errors by the trial court:

1) The trial court lacked authority to order restitution, together with a Penitentiary term where no probation or suspension of sentence was ordered;

2) The trial court violated due process by ordering restitution for offenses which Wolff did not admit and for which he was not convicted;

3) Procedures outlined in SDCL ch. 23A–28 were not followed; and

4) Seizure of his property for sale, the proceeds of which were to be applied toward restitution, constituted a forfeiture in violation of SDCL 23A–27–2.

We reverse the restitutional aspect of the sentence, and remand for resentencing on the restitution for failure to observe due process requirements; the conviction and thirteen-year sentence is not set aside.

1. Wolff relies primarily on the following parts of SDCL 23A–28–3:

> If the sentencing court orders the defendant to the county jail, suspended imposition of sentence, suspended sentence, or probation, the court may require as a condition that the defendant, in cooperation with the court services officer assigned to the defendant,

## FACTS

On October 25, 1987, at 9:30 p.m., Dan Peterson, an investigator for the Rapid City Police Department, arrived at Mr. Wolff's place of business to investigate possible fraud involving a $5,700 check issued by Wolff. The business in possession of the check reported that its personnel had seen Wolff loading property into a U–Haul truck, and was concerned that he might be skipping out on his debts. Such proved to be the case. Peterson discovered that Wolff had loaded three vehicles with property he had acquired purportedly for use in a new business he was opening. Wolff's home and business were stripped of most moveable property items. Wolff explained that he was taking some locally rented items with him to Colorado for safekeeping, as he feared his home would be broken into. Investigation revealed $15,-550.40 in NSF checks. Wolff entered into a plea bargain by which a potential life sentence and $25,000 in fines was eventually reduced to $15,550.40 in restitution, and thirteen years (of a possible fifteen years under the charges pleaded to) imprisonment in the Penitentiary. He admitted, specifically, only the charges in Count I, to which he pleaded guilty. He stated, generally, that he had been in debt and tried to leave town until he could repay the debts.

## DECISION

### I. AUTHORITY TO ORDER RESTITUTION

■ Wolff first argues that there is no statutory authority for sentencing courts to order restitution when a defendant is sentenced to the penitentiary and receives neither a suspended sentence, suspended imposition of sentence, probation, nor a sentence to be served in county jail, pursuant to SDCL 23A–28–3.[1] We disagree. A

> promptly prepare a plan of restitution, including the name and address of each victim, a specific amount of restitution to each victim and a schedule of restitution payments. ... If the sentencing court orders the defendant to the state penitentiary and does not suspend the sentence, the board of pardons and paroles may require as a condition of parole

statute must be construed according to its intent, which must be determined from the statute as a whole, as well as enactments relating to the same subject. *In re Appeal of AT & T Information Systems*, 405 N.W. 2d 24, 27 (S.D.1987). Read together, the statutes concerning restitution in criminal cases establish a restitutional scheme which is broader than that envisioned in Wolff's argument.

Statutes on restitution in criminal cases appear in SDCL chs. 22–6, 23A–27, and 23A–28, which are respectively titled: "Authorized Punishments," "Sentence and Judgment," and "Restitution to Victims of Crime." SDCL 22–6–1 authorizes courts, in addition to sentence imposed, to order a defendant found guilty of a felony to "make restitution to any victim in accordance with the provisions of chapter 23A–28."[2] SDCL 23A–27–1 also provides that courts, in imposing sentence, "shall enter an order of restitution in accordance with chapter 23A–28." Turning to SDCL ch. 23A–28, we find that "[i]t is the policy of this state that restitution may be made by each violator of the criminal laws to the victims of his criminal activities to the extent that the violator is reasonably able to do so...." SDCL 23A–28–1. SDCL §§ 23A–28–5 and –6 detail procedures regarding plans of restitution for defendants serving in the penitentiary. We hold these statutes to be indicative of legislative intent to authorize courts to order restitution regardless of the form a particular sentence may take, and generally agree with the following analysis:

> Some judges had viewed restitution and incarceration as mutually exclusive alternatives. Responding to the hesitancy of the judiciary to order restitution in conjunction with incarceration, the South Dakota Legislature passed SDCL sections 22–6–1 and 22–6–2. According to those laws, the court could order that the defendant make restitution in addition to the sentence that was imposed, including imprisonment. This freed restitution from the historical province of probation under section 23A–28–3. It also heightened restitution to a status commensurate to or above that held by the conventional punitive sanctions of imprisonment and fines.

*Crime and Punishment: The Propriety and Effect of South Dakota's Victim Restitution Legislation*, 31 S.D.L.Rev. 783, 785 (1986) (footnotes omitted). This is consistent with other jurisdictions which allow restitution in conjunction with imprisonment. *See Commonwealth v. Reed*, 374 Pa.Super. 510, 543 A.2d 587 (1988); *Eatherton v. State*, 761 P.2d 91 (Wyo.1988).

We reject Wolff's argument that 1987 amendments to SDCL ch. 23A–28 (see 1987 S.D.Sess.L. ch. 179) deprived courts of authority to order defendants imprisoned in the penitentiary to make restitution. The amendments referred to by Wolff concern allocation of responsibility for preparation of plans of restitution, not authority to order restitution in the first place. For those persons serving time in the State Penitentiary, the Board of Pardons and Paroles has the responsibility of preparing and administering plans of restitution. SDCL 23A–28–5.

## II. ORDERING RESTITUTION FOR OFFENSES FOR WHICH WOLFF NEITHER ADMITTED NOR STOOD CONVICTED (ALLEGED DUE PROCESS VIOLATION)

■ The trial court ordered Wolff to make restitution for $15,550.40 in NSF checks, although the sole criminal count he actually pleaded guilty to was theft by embezzlement of property received in trust. This consisted of two television sets, one disk player, one stereo, and two freezers, of a value exceeding $200. We note, in the presentence report, that no less than fourteen different businesses were reported as victimized by Wolff's NSF checks, in a total amount of $15,550.40. These NSF charges were not prosecuted as a result of

that the defendant, in cooperation with the executive director of the board of pardons and paroles, prepare the plan of restitution as described in this section.

**2.** SDCL 22–6–2 provides the same authority in misdemeanor cases.

Wolff's plea bargain. Wolff admitted that he tried to run out on his obligations and "decided the only way to take care of the problem was to load up what I could and leave until I had the money to make everything good. I know it was a bad decision to leave but I was just so far in debt, I knew I was going to jail if I stayed in Rapid." Crucially, there is no indication that he admitted passing the individual bad checks for which the $15,550.40 restitution was ordered. As expressed in *State v. West*, 320 N.W.2d 570, 574–75 (Iowa 1982), Wolff did not specifically admit all of the criminal acts.

> At his plea hearing, Wolff told the court: I got into a bind and in debt over my head and I was hoping to do enough business on that Saturday and Sunday, and deposit enough money Monday, and make everything good and Saturday and Sunday came around and the business didn't look good and I got scared Sunday night because of the debt that I was in and knowing what I was going to face Monday, and got scared and loaded up what I could and left.

This statement is general in nature. The trial court examined him only with regard to the specific property involved in Count I. The trial court also did not address the matter of restitution in any form at the plea hearing. Wolff was not, apparently, informed that he would be liable for the NSF checks if he pleaded guilty to Count I of the Information. The penalties discussed were imprisonment, not restitution. We therefore hold that his due process rights, guaranteed under the Fifth and Fourteenth Amendments to the United States Constitution and Article VI, § 2, of the South Dakota Constitution, were violated.

In context of a plea bargain in conjunction with probation, the Eighth Circuit Court of Appeals has observed: "[A] plea bargain severely limits the discretion of a sentencing judge. The amount of restitution required in this case is substantial and should have been articulated in the plea bargain or in a proposed amended plea bargain that the accused could accept or reject." *United States v. Runck*, 601 F.2d 968, 970 (8th Cir.1979). A large amount of restitution should be part of a plea bargain, as it materially alters the expectation of the parties. *Id.* Here, where the plea hearing contains no hint of restitution, and the court discussed only potential imprisonment terms and fines with Wolff, the restitution ordered is beyond the scope of Wolff's agreement.

Earlier, we alluded to a law review article, found at 31 S.D.L.Rev. 783, and we note that this law review article suggests guidelines to protect the constitutional rights of defendants affected by our restitution statutes. *Supra*, at 792. Our statutes, in SDCL §§ 23A–28–3 and 23A–28–5, now provide the proposed protections, with a single glaring exception: The inclusion of restitution as a condition of probation, or as a part of a coercive sentence should be made known to the defendant. The same point is made in *Runck*, 601 F.2d at 970. Clearly, this record does not substantiate due process protection by informing the defendant of the restitution he faced.

In summary, the restitution ordered did not pertain to offenses to which Wolff pleaded guilty or specifically admitted, and the trial court did not inform him of, or otherwise discuss, potential restitution at his plea hearing. This should have been done. The trial court's order of restitution is, therefore, reversed. We limit our holding to a prospective application.

### III. PROCEDURES UNDER SDCL CH. 23A–28

Wolff next asserts that the trial court did not follow procedures required by SDCL ch. 23A–28 in the following regards: 1) No plan of restitution was prepared in cooperation with the court services officer; 2) no determination was made that Wolff was presently unable to make restitution; 3) no determination was made as to whether he could make restitution during probation or parole; and 4) he was given no opportunity to contest whether any victim actually suffered any pecuniary loss or to oppose recommendations of the court services officer. The trial court instructed Wolff, the court

services officer, the State's Attorney, and the Sheriff to "work it all out." In the circumstances of this case, where Wolff, facing a $15,000 restitution order, stated that he had $40,000 in equipment, and it is obvious that any plan of restitution was yet to be formulated, Wolff's specific allegations of statutory violations are either premature (allegations 1 and 4) or wholly lacking in merit (allegations 2 and 3). The statutes do not require preparation of the plan of restitution prior to the sentencing hearing.

The true procedural problem is that the Legislature changed SDCL ch. 23A–28 in 1987 and thereby reallocated the responsibility of preparing plans of restitution for defendants serving their sentence in the penitentiary. *See* 1987 S.D.Sess.L. ch. 179 (H.B. 1100). Prior to these amendments, SDCL 23A–28–3 provided, *inter alia*, that "[i]f the sentencing court orders the defendant ... *to the state penitentiary* ... the court shall require as a condition that the defendant, in cooperation with the court services officer assigned to the defendant, promptly prepare a plan of restitution[.]" The 1987 amendments, among other things, deleted the underlined language from SDCL 23A–28–3. 1987 S.D.Sess.L. ch. 179, § 1. In so doing, the Legislature did not, however, free those sent to the penitentiary from the reach of their obligation to make restitution, as reflected in other changes made to SDCL ch. 23A–28. Section 2 of ch. 179 added the following provision to SDCL 23A–28–5: "For a defendant serving a sentence in the state penitentiary the board of pardons and paroles shall consider these factors when preparing the plan of restitution." Section 3 of ch. 179 changed SDCL 23A–28–6 by limiting court services officers' duty of providing victims with copies of restitution plans to cases involving "any defendant not serving his sentence in the state penitentiary." Distribution of copies of restitution plans to victims of defendants in the penitentiary was shifted from court services officers to the executive director of the board of pardons and paroles. 1987 S.D.Sess.L. ch. 179, § 3. The trial court's handling of Wolff's restitution was, therefore, statutorily unautho-

rized, after the 1987 amendments, although it would have been proper under SDCL 23A–28–3 in its earlier form.

 SDCL ch. 23A–28, as currently formulated, places the responsibility for preparing and distributing plans of restitution within the board of pardons and paroles. This is consistent with the principle of separation of powers enunciated in *State v. Oban*, 372 N.W.2d 125, 129 (S.D.1985): "[O]nce an offender is within the jurisdiction of the executive branch of government, the judicial branch—the circuit court—loses jurisdiction and control" subject to certain exceptions irrelevant to this case. *See also State v. Huftile*, 367 N.W.2d 193, 196 (S.D.1985). Here, Wolff was sentenced at a hearing on January 4, 1988, and was received at the penitentiary on January 7, 1988. Once Wolff entered the penitentiary, any plan of restitution, under SDCL 23A–28–5, had to be created under the authority of the board of pardons and paroles, not the trial court and its court services officer. Prior to Wolff's delivery to the penitentiary, the circuit court had jurisdiction to formulate a plan of restitution. In so holding, we note SDCL 23A–27–32 which provides, in pertinent part: "Whenever any person is convicted of a felony, the judge before whom such person is convicted shall furnish the board of pardons and parole with a plan of restitution pursuant to chapter 23A–28." This segment of SDCL 23A–27–32 was last amended in 1986 and, therefore, is impliedly repealed by the later legislative pronouncement to the extent that it conflicts with SDCL 23A–28–5. "Although repeals by implication are not favored, if there is irreconcilability between statutes, the latter statute prevails." *In re Appeal of Sales Tax Refund Applications of Black Hills Power & Light Co.*, 298 N.W.2d 799, 803 (S.D. 1980). *See also South Dakota Bd. of Regents v. Meister*, 309 N.W.2d 121 (S.D. 1981); *Kneip v. Herseth*, 87 S.D. 642, 214 N.W.2d 93 (1974). In conclusion, trial courts may prepare plans of restitution when defendants are under its jurisdiction. However, once the defendant enters the penitentiary, the Board of Pardons and Pa-

roles may prepare its own plan of restitution. Obviously, these two branches of government should communicate and coordinate from the sentencing to the arrival of the defendant at the penitentiary, to avoid any loss to a victim. We must all consider the intent of the statutes, which is to compensate victims for their loss.

## IV. RESTITUTION AS FORFEITURE

 Wolff's last argument is that the restitution ordered constituted an illegal forfeiture under SDCL 23A–27–2, which provides: "No conviction of any person for a public offense works any forfeiture of any property except in cases in which a forfeiture is expressly imposed by law." We deem this argument to be without foundation, due to specific statutes on restitution having been passed by the State Legislature.

All the Justices concur.