**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Warren A. TUTTLE, Defendant and Appellant.**

**No. 16642.**

Supreme Court of South Dakota.

Considered on Briefs Jan. 11, 1990.

Decided Aug. 22, 1990.

Ann C. Meyer, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Roger A. Tellinghuisen, Atty. Gen., on brief.

David R. Wurm, Public Defender of Pennington County, Rapid City, for defendant and appellant.

SABERS, Justice.

As part of a plea agreement, Warren Tuttle (Tuttle) pled guilty to one count of second degree arson and a second count of arson was dismissed. Tuttle was sentenced to fourteen years in the State Penitentiary, with two years suspended on condition that Tuttle make restitution to the victims of both arsons. Although specifically requested by Tuttle, the trial court did not conduct a hearing regarding restitution. We reverse the restitution portion of Tuttle's sentence and remand the matter to the trial court for further proceedings in conformity with this opinion.

### FACTS

On December 23, 1988, a fire occurred at a trailer owned by Mike Powell (Powell) and rented by Wayne Lewis (Lewis). A second fire occurred on December 24, 1988, in a trailer owned by Myrl Pawlowski (Pawlowski) and rented by Tammy Brooks (Brooks). Tuttle was charged with two counts of second degree arson in connection with the fires and a public defender was appointed to handle his defense. At arraignment, the trial court granted Tuttle's request for a continuance to consider a proposed plea bargain. On January 20, 1989, Tuttle entered a guilty plea to one count of second degree arson. In return for his guilty plea, the State agreed to dismiss the other arson charge and to forego prosecution on a burglary charge and a potential habitual offender charge. Restitution and sentencing were not part of the plea agreement and restitution was not mentioned at the plea hearing.

Following the plea hearing, Tuttle wrote to the trial court and offered to "make payments for restitution" if he were given probation. A presentence report was completed which included a verbatim statement by Tuttle admitting to both arsons.

At sentencing, the trial judge specifically noted that Tuttle had written to the court offering to make restitution. Tuttle objected only to the amount of the State's restitution request and requested a hearing on restitution. The court did not grant a separate hearing, but rather proceeded with and completed sentencing that day, March 10, 1989. Tuttle was sentenced to fourteen years in the state penitentiary with two years suspended on certain conditions, in-

cluding restitution to the victims. Tuttle was ordered to pay: $250 to Powell; $1365 to Pawlowski; and, $400 to Brooks. These amounts are the exact amounts recommended in the Victim's Assistance Report prepared by the Victim's Assistant of Pennington County, except that the court did not require Tuttle to reimburse Powell's insurance company.

On April 3, 1989, Tuttle filed a motion to reduce restitution as a result of our March 22, 1989 ruling in *State v. Wolff*, 438 N.W.2d 199 (S.D.1989). At a hearing on May 1, 1989, the trial court denied the motion for reduction of restitution. Tuttle filed this appeal arguing that the trial court erred in imposing restitution without a hearing and in requiring that Tuttle pay restitution for crimes to which he did not plead guilty.

## DECISION

■ We have previously held that a defendant is entitled to be informed at the plea hearing that restitution may be imposed as part of the sentence. *State v. Wolff*, 438 N.W.2d 199 (S.D.1989).* In a recent opinion, *State v. Wilson*, 459 N.W.2d 457 (S.D.1990) we lengthened our discussion of that requirement, first enunciated in *Wolff*.

■ In this case we lengthen our discussion concerning what type of restitution hearing constitutes due process. We hold that a hearing on restitution is necessary because "due process requires, at a minimum, that absent a countervailing state interest of overriding significance, persons forced to settle their claims of right and duty through the judicial process must be given a meaningful opportunity to be heard." *Boddie v. Connecticut*, 401 U.S. 371, 377, 91 S.Ct. 780, 785, 28 L.Ed.2d 113, 118 (1971). At the restitution hearing, the

defendant is entitled to confront witnesses against him, but the rules of evidence and civil burden of proof do not apply. We also believe it is appropriate that the trial court enter written findings of fact in support of any order of restitution. *See* SDCL 15-6-52(a). *See also Renfro v. State*, 785 P.2d 491, 495 (Wyo.1990).

## ANALYSIS

Application of restitution statutes has not been trouble free in this state or other states. It has been suggested that attorneys tend to perceive restitution as a civil remedy and, consequently, expect that all of the procedural requirements of civil law should be applied. *See e.g.* Note, *Victim Restitution In The Criminal Process: A Procedural Analysis*, 97 Harv.L.Rev. 931, 932 (1984) (hereinafter "Victim Restitution"). Likewise, Tuttle argues that the imposition of restitution requires, as in traditional civil cases, a full jury trial. This argument has been adopted by some states. *See e.g. United States v. Welden*, 568 F.Supp. 516 (N.D.Ala.1983) *rev'd in pt. U.S. v. Satterfield*, 743 F.2d 827 (11th Cir. 1984). Other states have required no hearing at all. *See e.g. Shenah v. Henderson*, 106 Ariz. 399, 476 P.2d 854 (1970).

■ We agree with and adopt the following well-reasoned analysis:

Due process requires a factual hearing to determine the grounds of revocation [of probation] and that the defendant be informed of his probation violations, be able to confront his adversary, and be heard if he wishes. The same reasoning must apply to a restitution hearing. The state must afford notice of the hearing with an opportunity to confront the victim's claim for pecuniary loss and also an opportunity to be heard. Due process does not require that the rules of evi-

---

* In *Wolff* we specifically limited our holding to prospective application. By limiting *Wolff* to prospective application we intended to foreclose collateral appeals in finalized criminal cases, that is, cases in which the direct appeal process had been completed. *See Griffith v. Kentucky*, 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). In this case, sentencing had taken place prior to our decision in *Wolff* but the time to

file an appeal had not expired. Moreover, Tuttle had specifically requested that the trial court reconsider sentencing in light of our holding in *Wolff*. After the trial court denied the motion for reconsideration, Tuttle filed a timely appeal. This is not the type of case we intended to foreclose by our limitation of *Wolff* to prospective application.

dence and civil burden of proof apply to a restitution hearing.

*State v. Pope*, 107 Wis.2d 726, 321 N.W.2d 359, 361 (Ct.App.1982) (citations omitted). *See also State v. Lack*, 98 N.M. 500, 650 P.2d 22 (Ct.App.1982); *State ex rel. D.G.W.*, 70 N.J. 488, 361 A.2d 513 (1976).

In South Dakota, a hearing is required before probation or a suspended sentence may be revoked. *State v. Dammer*, 290 N.W.2d 869 (S.D.1980); *State v. Ellefson*, 334 N.W.2d 56 (S.D.1983). The standard of proof sufficient to support a criminal conviction is not necessary to revoke probation or suspended sentence. *State v. Olson*, 305 N.W.2d 852 (1981) (trial court must be reasonably satisfied that the conduct of the probationer did not satisfy the conditions of suspension); *State v. Herrlein*, 424 N.W.2d 376 (S.D.1988) (standard of proof at probation revocation hearing is "reasonably satisfied" standard). Restitution is similar to other criminal sanctions and requires no greater procedural protections than those normally employed in sentencing. *Victim Restitution*, *supra*, at 941. The fact that restitution may require new evidence unnecessary for the adjudication of guilt is also not a sufficient justification for greater procedural protection. *Id.* All forms of sentencing require the court to consider new evidence, including information about the offender's prior criminal record, his background, and his financial situation. *See* SDCL 23A–27–1.

It is important to note that Tuttle wrote to the trial court specifically offering to make restitution if he were given probation. Clearly, as a result of his own actions, Tuttle had the expectation that restitution might be imposed as a part of his sentence. At sentencing, the trial judge specifically noted Tuttle's offer to pay restitution. Tuttle's only objection was to the amount of the restitution requested. Even though Tuttle was not informed, prior to pleading guilty, that restitution could be imposed, we uphold the trial court's authority to impose restitution because Tuttle voluntarily offered to make restitution in return for consideration in sentencing. It cannot be said that Tuttle's sentencing expectations had been unilaterally altered by the trial court.

However, Tuttle objected to the amount of restitution requested and was consequently entitled to a hearing, as described above, concerning the proper amount of restitution. We remand this matter for a hearing to determine the proper amount of restitution in accordance with the facts, pertinent statutes, prior case law, and this opinion.

As a result of our decision to reverse and remand the restitution portion of Tuttle's sentence it is unnecessary for us to address the second issue raised in Tuttle's appeal brief.

WUEST, C.J., and MORGAN and MILLER, JJ., concur.

HENDERSON, J., concurs in result.

HENDERSON, Justice (concurring in result).

Carte blanche, the trial court accepted the recommendation of the Victim's Assistance Office of Pennington County. Handwritten notes, supplied by the victims themselves, reflected the damages the victims believed they had coming. These handwritten notes were the basis of the recommendations by the Victim's Assistance Office. *Ex parte*, the trial judge accepted the recommendations. When defense counsel objected to this procedure, and having received the recommendations on the morning of the sentencing, defense counsel asked for a separate hearing on the restitution. His request was summarily denied. *See* SDCL § 23A–28–3.

I certainly agree that Tuttle's procedural safeguards, under due process principles, were not minimally met nor were they met under the state statute which I have cited above. It is rather basic that a party has the right to be heard.

Conceding that this is a case which should be reversed on the restitution aspect, I am troubled by the generic language in the penultimate paragraph of the majority opinion. I would agree that the defendant should not have a jury trial on

restitution and I believe that it is proper, for purposes of review, that findings of fact and conclusions of law be entered below. Restitution can theoretically amount to tens of thousands of dollars. I would opt against a Mickey Mouse procedure and would require a formal setting with witnesses sworn and the right of cross-examination to prevail. Exhibits should be formally marked and introduced in evidence with a foundation. The defendant should be given the right to subpoena witnesses on his behalf as this procedure is part and parcel of the criminal case.

Lastly, a degree of proof must be established by this Court for guidance to the trial courts for their future action. "Beyond a reasonable doubt" and "by a preponderance of the evidence" I would dismiss hence. The majority opinion is somewhat vague about the requisite degree of proof. I would establish the "reasonably satisfied" standard in restitution proceedings, i.e., the State must prove the damages to such extent that the court is "reasonably satisfied" that the damages (restitution) exist per the proof.* Perhaps the majority opinion infers what I have set forth. Perhaps, also, the State Legislature should examine its restitutional scheme. When the Legislature provided for a "hearing" on the issue of the amount of restitution to be ordered, did it mean a "formal hearing" per the Rules of Civil Procedure? And what degree of proof did the Legislature have in mind? SDCL 23A–28–3 gives the trial court the power to "determine" the amount of restitution. No requisite platform of proof is specified. Are we then, instanter, judicial activists?

---

* This Court, in *State v. Davis*, 458 N.W.2d 812 (S.D.1990) handed down on August 1, 1990, reversed another circuit court judge of the Seventh Judicial Circuit on an issue of restitution. We expressed, inter alia, that "The policy of the restitution statutes of this state is to assure that criminals make restitution to the 'victims of [their] criminal activities to the extent that the violator is reasonably able to do so.' SDCL 23A–28–1." This statutory language places a duty upon a trial judge to make restitution to the extent that the violator is "reasonably able" to make restitution. Therefore, I would adopt an evidentiary posture, that a trial judge must be reasonably satisfied as to the existence of the damages and "reasonably satisfied" that the violator is "reasonably able" to make restitution. In adopting such a standard (legal foghorn— warning of reversible danger), we steer clear of a fog that could cloud a trial court's judgment and eliminate a blurring signal from this Court.