1999 SD 112

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Elmer a/k/a "Bud" RUTTMAN, d/b/a D & E Cafe, Defendant and Appellant.**

**No. 20508.**

Supreme Court of South Dakota.

Considered on Briefs March 24, 1999.

Decided Aug. 18, 1999.

Mark Barnett, Attorney General, David D. Wiest, Assistant Attorney General, Attorneys for plaintiff and appellee.

Al Arendt of Maher and Arendt, Pierre, South Dakota, Attorneys for defendant and appellant.

BASTIAN, Circuit Judge.

[¶ 1.] After a sentence and restitution hearing which followed pleas of nolo contendere to twelve counts of sales tax evasion, Elmer (Bud) Ruttman (Ruttman) was ordered to pay $184,345.88 in restitution to the State of South Dakota and the City of Pierre. He was also ordered to pay $11,-000 for the costs of prosecution, court costs, and a $1,000 fine on each count. Ruttman appeals the restitution order. He asks this Court to reverse the trial court and enter an amended judgment consistent with the testimony of his expert at the restitution hearing. We affirm.

[¶ 2.] Ruttman was charged by an indictment alleging twelve counts of making a false or fraudulent sales tax return in an attempt to defeat or evade sales tax, in violation of SDCL 10–45–48.1(1). The State alleged Ruttman underreported his sales taxable gross receipts and then underpaid the accompanying sales tax. The indictment pertained to sales tax returns filed in 1993. When he entered his pleas of nolo contendere, however, Ruttman understood the State would be seeking restitution for tax and interest for the period of their audit from January 1986 through June 1994.

[¶ 3.] The restitution and sentencing hearing involved two days of testimony. At a restitution hearing, the defendant is entitled to confront witnesses against him, but the rules of evidence and civil burden of proof do not apply. *State v. Tuttle*, 460 N.W.2d 157, 159 (S.D.1990). The standard of proof at a restitution hearing is the "reasonably satisfied" standard. *Tuttle, supra,* at 160. Restitution is similar to other criminal sanctions and requires no greater procedural protections than those normally employed in sentenc-

ing. *Id.* The evidence at the hearing included the following facts.

[¶ 4.] Ruttman solely owns and operates the D & E Cafe in Pierre, South Dakota. He has held a sales tax license since 1965. During the relevant time period, the cafe was open twenty-four hours a day, six days a week. Ruttman charged sales tax to his customers.

[¶ 5.] In late 1994, the South Dakota Department of Revenue conducted a sales tax audit of Ruttman's operation of the D & E Cafe. State law requires Ruttman to keep records and books of all receipts and sales, invoices, cash register tapes, and other pertinent papers and documents for a period of three years unless destruction or disposal is authorized by the secretary of revenue. SDCL 10–45–45; ARSD 64:06:01:35. During the audit, the department found that Ruttman did not keep cash register tapes, had incomplete, unorganized and inaccurate records, did not keep a bank account, paid his employees in cash, and paid his suppliers either in cash or bank money orders. Ruttman told revenue agents that he prepared and filed the sales tax returns and they were accurate to the best of his knowledge. He also informed the agents that his business was profitable.

[¶ 6.] Ruttman also told the agents that he was not aware of the requirements to keep business records. The agents found the statement surprising because of Ruttman's previous history with the department. In 1986, after an audit of his business for the years 1983, 1984 and 1985, Ruttman was charged with nine counts of making fraudulent sales tax returns in violation of SDCL 10–45–48.1(1). He pled guilty to one count, received a suspended imposition of sentence, was placed on probation and required to perform community service and pay restitution. In 1987, Ruttman agreed to a settlement for the amount of unpaid taxes, penalties and interest remaining from the 1983–1985 audit, and paid the State $40,000.

[¶ 7.] Because Ruttman could not be audited with traditional direct methods, the State used an indirect percentage method. Using this method, the department determines the cost of goods sold (i.e. the cost of the ingredients of meals at the D & E Cafe) for a specific period. The department also determines a percentage, termed the "cost of goods sold percent," which represents the part of the price paid for a meal which is attributable to the ingredients. If a meal costs $5.00, for example, and the ingredients cost $2.00, the cost of goods sold percent is forty percent. When the cost of goods sold for a specific period is divided by the cost of goods percent, the amount of gross receipts for that period can be determined. For instance, if the total cost of goods sold for a certain period is $5000, that amount divided by forty percent (the cost of goods sold percent in the example above) yields $12,500 of gross receipts. Gross receipts multiplied by the sales tax rate yields the sales tax to be paid. If the cost of goods percent is increased, the amount of gross receipts and the corresponding amount of tax due is reduced.

[¶ 8.] In order to utilize the percentage method, it was necessary to compile a complete list of purchases for the D & E Cafe. The agents obtained invoices and records of other expenditures from Ruttman and his suppliers, and interviewed witnesses who were familiar with Ruttman's operation of the D & E Cafe including the number of employees and the amount of wages paid. The agents also obtained his IRS tax returns for the audit period. The agents discovered that in 1993 Ruttman reported more gross receipts to the IRS than to the State. They also discovered that his actual purchases exceeded the amount he reported to the State in gross receipts.

[¶ 9.] The department also calculated Ruttman's cost of goods sold percent. To determine the cost of goods percent, a comparison is made between the menu cost of a meal and the ingredient cost of the same meal. Because D & E Cafe menus were unavailable until the later stages of the investigation, the department initially relied on industry averages contained in the Robert Morris Associates Annual Statement Studies for 1993. The Robert Morris Study showed that typical cafes had a cost of goods sold percentage of 42.3 percent. When the department reviewed Ruttman's IRS returns, a two year average showed a cost of goods sold percent of 81.12 percent. The IRS returns were deemed unreliable but the department did not believe that Ruttman's cafe was typical 42.3 percent business because it was known for low prices. The department determined the cost of goods sold percent for the D & E Cafe by splitting the difference between the industry average and the cost of goods sold percent indicated by the IRS returns. The result was a cost of goods percentage of 61.71 percent.

[¶ 10.] A few months before Ruttman entered his pleas, the department obtained menus from the D & E Cafe for 1991 through 1996. The department performed additional calculations and found the average of Ruttman's cost of goods sold to be less than 61.71 percent. Nonetheless, the department gave the benefit of the doubt to Ruttman and continued to use 61.71 percent as the cost of goods sold percentage for the D & E Cafe.

[¶ 11.] The 61.71 cost of goods sold percent was applied to Ruttman's purchases (cost of goods sold) for the period July 1991 through June 1994. The department compared this amount with what Ruttman actually reported, and determined an error factor of 50.749 percent. The error factor was applied to the period from January 1986 (the end of the previous audit) to June 1991. Accordingly, the department determined that Ruttman failed to pay $42,130.90 of sales tax to the State and $30,518.82 of sales tax to the City of Pierre from January 1986 to July 1994. With accumulated interest, the total owed by Ruttman was $184,345.88. After considering the evidence at the restitution and

sentencing hearing, the trial court agreed with the department's analysis.

[¶ 12.] Ruttman presented several witnesses during the restitution hearing. His evidence indicated that he was underpaying his sales tax, but only at the rate of 7.64 percent.

[¶ 13.] Ruttman identifies one legal issue: Did the trial court abuse its discretion in ordering restitution in the amount of $184,345.88? Ruttman claims his records were lost in a flood. He argues that the cost of goods sold percentage of 61.71 percent was arbitrary and without any basis, and that the department's method was not supported by substantial evidence. He also argues the trial court should have given him credit for waste and for meals that he provided his employees.

[■■■■■14.] Ruttman cites an improper standard of review. Whenever a trial court makes findings of fact pursuant to statutory or case law, we review those findings under a clearly erroneous standard. We recently discussed the standard in *Estate of Unke*, 1998 SD 94, 583 N.W.2d 145. We held:

> We will not set aside a trial court's findings of fact unless they are clearly erroneous. A trial court's finding is clearly erroneous if, "after reviewing the entire evidence, we are left with the definite and firm conviction that a mistake has been made[.]" All conflicts in the evidence must be resolved in favor of the trial court's determinations. "The credibility of the witnesses, the weight to be accorded their testimony, and the weight of the evidence must be determined by the trial court and we give due regard to the trial court's opportunity to observe the witnesses and the evidence." (citations omitted.)

*Estate of Unke*, 1998 SD 94 at ¶ 11, 583 N.W.2d 145.

[¶ 15.] The State's evidence at the hearing was challenged by Ruttman, but this only created questions of fact for the trial court to decide. The trial court considered Ruttman's claim that a flood destroyed his records but gave little credence to it, stat-

ing "Some of the records may have been destroyed in the flood but certainly not all of them and it seems strange that the ones needed for the audit were the ones destroyed in the flood." Applying the clearly erroneous standard to the evidence herein, we conclude the findings by the trial court have firm support in the record.

[5] [■ 16.] Ruttman argues the trial court should have given him credit for meals that he claims he provided his employees and for waste that he claims was greater than that calculated by the department. In *City of Lennox v. Wendell*, 278 N.W.2d 635 (S.D.1979) we rejected a similar argument:

> Although it does not appear that the Secretary gave any allowance for spillage, free drinks or breakage, we do not believe that such an allowance was required where, as here, the Bar did not have records indicating how much liquor was lost through these non-sales dispositions of inventory.

*City of Lennox, supra,* at 637.

[¶ 17.] Ruttman did not have adequate records to support his claim. For the reasons expressed in *City of Lennox*, we reject his argument.

[¶ 18.] Ruttman cites *City of Lennox, supra,* and argues the department's method must be supported by substantial evidence. The substantial evidence standard, however, does not apply to this proceeding. Before the trial court heard the evidence concerning restitution, Ruttman had pleaded no contest to twelve felony counts of sales tax evasion. The question of whether he underpaid his taxes had been resolved. The only issue remaining was the amount of underpayment. As discussed previously, the standard of proof at a restitution hearing is the "reasonably satisfied" standard. The standard does not change regardless of the type of crime that has been committed.

[6] [■ 19.] The cost of goods sold percentage of 61.71 percent was not arbitrary. It was initially based on a comparison be-

914

tween the operation of the D & E Cafe and the industry standard. This included an analysis of Ruttman's purchases for the D & E Cafe including invoices and records of other expenditures, and information regarding the number of employees, the amount of wages paid, and Ruttman's IRS tax returns for the audit period. The percentage was later reaffirmed when the department performed additional analysis using menus from the D & E Cafe for the audit period. The method used by the department in this case is similar to that used in *State v. Karras*, 438 N.W.2d 213 (S.D.1989).

[¶ 20.] Accordingly, we find the department's method and its cost of goods sold percentage of 61.71 percent are clearly supported by the evidence under the "reasonably satisfied" standard. As we stated in *City of Lennox, supra*, this method of extrapolating sales based on purchases may be avoided by simply and accurately keeping the books and records required by SDCL 10–45–45. A contrary conclusion would invite inadequate record keeping as a means of evading full payment of the sales tax, which we believe would contravene legislative intent. *Id.*

[¶ 21.] We have considered the remaining issues and find them to be without merit.

[¶ 22.] SABERS, AMUNDSON, KONENKAMP and GILBERTSON, Justices, concur.

[¶ 23.] BASTIAN, Circuit Judge, for MILLER, Chief Justice, disqualified.