#24101-a-PER CURIAM
**2007 SD 59**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,              Plaintiff and Appellee,

v.

RYAN WINGLER,                  Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT
OF THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

HONORABLE ROBERT AMUNDSON
Justice (Retired)
Sitting as a Circuit Court Judge

* * * *

LAWRENCE E. LONG
Attorney General

KATIE L. HANSEN
Assistant Attorney General        Attorneys for plaintiff
Pierre, South Dakota             and appellee.

JOHN R. HINRICHS
Minnehaha County Public Defender   Attorney for defendant
Sioux Falls, South Dakota         and appellant.

* * * *

CONSIDERED ON BRIEFS
ON MARCH 19, 2007

OPINION FILED 6/20/07

PER CURIAM

[¶1.]        Ryan Wingler (Wingler) appeals the restitution provisions in his sentence for five counts of committing a fraudulent insurance act and one count of grand theft of property received in trust. We affirm.

FACTS

[¶2.]        Wingler was a resident of Sioux Falls and a licensed insurance agent authorized to sell annuities for Allianz Insurance Company (Allianz). In 2003 he began approaching some of his clients and convinced them to cash in their existing annuity policies despite the fact that they would suffer significant financial penalties. Wingler then sold the clients new policies from Allianz, promising larger returns on their investments. Wingler had each victim make the check for their new policy out to a fictitious agency (Senior + Financial Group or Dakota Choice) and deposited the funds into accounts he controlled and later accessed for his personal use and purchase of large ticket items such as motor vehicles. None of these funds were ever used to purchase annuities from Allianz or any other company.

[¶3.]        One of Wingler's clients eventually discovered his fraud and complained to the State Division of Insurance. After an investigation, Wingler was indicted for six counts of committing a fraudulent insurance act and seven counts of grand theft of property received in trust. After plea bargaining, Wingler eventually pled guilty to five counts of committing a fraudulent insurance act and one count of grand theft of property received in trust in exchange for the dismissal of the remaining charges and the reservation of his right to a restitution hearing.

[¶4.]		A combined sentencing and restitution hearing was conducted on March 10, 2006.  Most of the victims testified as to their own losses and an investigator for the South Dakota Insurance Fraud Prevention Unit also provided testimony as to the victims' losses.  At the close of the hearing, the trial court sentenced Wingler to a total of twenty-one years in the penitentiary with three years suspended.  Restitution was taken under advisement.  The trial court subsequently entered findings of fact, conclusions of law and a memorandum opinion setting forth the amount of restitution awarded to each victim for a total restitution order of $373,695.13.  A written judgment was entered on June 21, 2006.  Wingler appeals from those portions of the judgment awarding $7,507.50 in restitution to Rolland Reinke, Jr. (Reinke) and $329,839.40 in restitution to Allianz.

ISSUE ONE

[¶5.]		**Did the trial court deny Wingler a meaningful hearing as to victim Reinke's losses?**

[¶6.]		Although Reinke was one of Wingler's victims, he did not testify during the restitution hearing.  The record reflects that Reinke was notified of the hearing, but was not present for it.  Wingler argues that Reinke's absence denied him a meaningful opportunity to confront the State's claims as to Reinke's losses and denied him due process of law.  Accordingly, he asserts that the trial court abused its discretion in its restitution award to Reinke.

[¶7.]		The standards for reviewing restitution awards are outlined in State v. Martin, 2006 SD 104, ¶ 5, 724 NW2d 872, 874:

> "At a restitution hearing, the defendant is entitled to
> confront witnesses against him, but the rules of evidence
> and civil burden of proof do not apply."  State v. Ruttman,

> 1999 SD 112, ¶ 3, 598 NW2d 910, 911 (citing State v.
> Tuttle, 460 NW2d 157, 159 (SD 1990)). Therefore, the
> "reasonably satisfied" standard of proof applies in
> determining restitution. *Tuttle*, 460 NW2d at 160.
> Furthermore, a trial court has broad discretion in
> imposing restitution. State v. Thayer, 2006 SD 40, ¶ 16,
> 713 NW2d 608, 613. However, questions of law are
> reviewed under a de novo standard with no deference
> given to the trial court's conclusions. City of Deadwood v.
> Summit, Inc., 2000 SD 29, ¶ 9, 607 NW2d 22, 25 (citations
> omitted).

In addition, the trial court's findings of fact concerning a restitution award are reviewed under the clearly erroneous standard. *See Ruttman*, 1999 SD 112, ¶ 14, 598 NW2d at 913.

[¶8.] Here, as Wingler asserts, Reinke did not testify during the restitution hearing. However, the State insurance investigator testified that he investigated Reinke's losses. The investigator testified that in October of 2003, Reinke wrote a check for $65,000 to one of the fictitious agencies utilized by Wingler and that Wingler deposited the proceeds from the check into an account he controlled at First Federal Savings Bank in Sioux Falls. The investigator further testified that he had reviewed the disbursements from that account. While the disbursements reflected payments to various individuals and businesses as well as cash withdrawals by Wingler, no funds in the account were paid out to Allianz. The investigator also testified that Reinke obtained the $65,000 he paid to Wingler by cashing in an annuity he had previously purchased from Standard Life Insurance Company and paying an early withdrawal penalty of $13,362.23. Finally the investigator testified that Allianz reimbursed Reinke $70,854.78 for his losses.[1]

---

1. The reason for the reimbursement is discussed under Issue Two.

[¶9.] Various documents were offered in support of the insurance investigator's testimony including copies of Reinke's cancelled check for $65,000 to Senior + Financial Group, a copy of Wingler's deposit slip from First Federal Savings Bank for $65,000 and a summary prepared by the investigator showing disbursements from the First Federal account to various individuals and businesses and cash withdrawals by Wingler. Also offered in support of the investigator's testimony was a copy of a letter from Standard Life Insurance Company to Reinke verifying his withdrawal of a $78,362.23 annuity less a withdrawal charge of $13,362.23 for a balance paid to Reinke of $65,000.

[¶10.] Based upon the record and the foregoing testimony and evidence, the trial court found: that Wingler pled guilty to fraud against Reinke; that Allianz reimbursed Reinke for losses caused by Wingler's fraud; and, that Reinke was a victim of the fraud who suffered pecuniary damages. The trial court further found: that Wingler embezzled $65,000 from Reinke; that Reinke also paid a withdrawal penalty for his Standard Life annuity of $13,362.23; and, that Reinke had been reimbursed for some of his losses in the amount of $70,854.73. Based upon these findings, the trial court determined that the evidence supported a restitution award of $7,507.50 to Reinke (*i.e.*, $65,000 + $13,362.23 – $70,854.73 = $7,507.50). This was a similar conclusion to that reached as to the other victims and relied upon a consistent formula for determining the restitution award.

[¶11.] Given the evidence and testimony presented and the "reasonably satisfied" burden of proof, we hold that there was sufficient evidence to support the trial court's findings of fact and no abuse of discretion in its calculation of the

restitution award. While the rules of evidence may not have been strictly followed by the trial court in calculating restitution, those rules are inapplicable in a restitution hearing. *See Tuttle*, 460 NW2d at 159 (defendant is entitled to confront witnesses against him during a restitution hearing, but the rules of evidence and civil burden of proof do not apply).

[¶12.] A similar case was presented to this Court in *Ruttman, supra*. In *Ruttman*, the defendant was convicted of twelve counts of sales tax evasion and, after a two day hearing, was ordered to pay restitution of $184,345. The amount of restitution was based upon a state audit and estimate of taxes not paid calculated according to a cost of goods sold formula utilized by state revenue agents. The defendant presented his own witnesses during the restitution hearing to challenge the State's evidence, but did not have adequate records to support his claim that he was entitled to certain tax credits. In ruling on the defendant's argument that the method of calculating restitution was arbitrary and not supported by substantial evidence, this Court observed:

> The substantial evidence standard . . . does not apply to this proceeding. Before the trial court heard the evidence concerning restitution, [the defendant] had pleaded no contest to twelve felony counts of sales tax evasion. The question of whether he underpaid his taxes had been resolved. The only issue remaining was the amount of underpayment. As discussed previously, the standard of proof at a restitution hearing is the "reasonably satisfied" standard. The standard does not change regardless of the type of crime that has been committed.
>
> * * *
>
> Accordingly, we find the department's method and its cost of goods sold percentage of 61.71 percent are clearly

> supported by the evidence under the "reasonably satisfied" standard.

*Ruttman*, 1999 SD 112, ¶¶ 18 - 20, 598 NW2d at 913 - 14.

[¶13.]    This case is similar because, before the trial court heard the evidence concerning restitution, Wingler had pleaded guilty to five counts of fraudulent insurance acts and one count of grand theft of property received in trust.  The question whether he committed multiple acts of fraud and theft had been resolved.  The only issue remaining was the amount of loss sustained by each victim.  The trial court's method of calculating those losses was not arbitrary and was supported by the evidence under the "reasonably satisfied" standard.

[¶14.]    As for Wingler's claims concerning lack of opportunity to confront and cross-examine Reinke, a similar argument was presented to the Appeals Court of Massachusetts in Commonwealth v. Cromwell, 778 NE2d 936 (MassAppCt 2002).  In *Cromwell*, the amount of restitution for damage done to an automobile was based upon a previous sworn statement from the victim and documentary evidence submitted during the restitution hearing.  As to the defendant's confrontation claims, the Massachusetts Court held:

> The defendant's claim of lack of opportunity to cross-examine [the victim] is without merit in view of his failure to summons her or seek her attendance at the restitution hearing, or to request a continuance after the prosecutor established damages on the basis of the documentary evidence and [the victim's] previous sworn statement.  In the circumstances, the defendant cannot complain that he was not afforded a meaningful opportunity to challenge the amount of restitution requested and ordered.

*Cromwell*, 778 NE2d at 942, n 7.

[¶15.] Here, Wingler was similarly afforded a restitution hearing and similarly failed to summons Reinke or to seek his attendance at the hearing or to request a continuance after the prosecutor established damages on the basis of the insurance investigator's testimony and documentary evidence. Accordingly, Wingler cannot complain that he was not afforded a meaningful opportunity to challenge the amount of restitution requested and ordered.

ISSUE TWO

[¶16.] **Did the trial court err in determining that Allianz was a "victim" eligible for restitution from Wingler?**

[¶17.] Because Wingler was ostensibly acting for Allianz when he carried out his scheme and because Wingler was actually authorized and appointed to sell annuities for Allianz, Allianz reimbursed most of Wingler's victims for the purchase price of the fictitious annuities, plus interest.[2] Based upon its total reimbursements to all of the victims, the trial court awarded Allianz restitution from Wingler in the amount of $329,839.40. Wingler argues that the trial court abused its discretion in this award because Allianz was not a "victim" of Wingler's crimes as defined by law.

[¶18.] SDCL 23A-28-1 provides that it is the policy of this State that each violator of the criminal laws make restitution "to the *victims* of the violator's criminal activities[.]" (emphasis added). SDCL 23A-28-2(5) provides in pertinent part that a "victim" is:

> any person, as defined in subdivision 22-1-2(31), who has suffered pecuniary damages as a result of the defendant's criminal activities, including any person who has by

---

2. Reinke was one of the victims reimbursed by Allianz. The only victim not reimbursed by Allianz purchased his fictitious annuity after Allianz had already terminated Wingler's agency.

> contract or by statute undertaken to indemnify another or to pay or provide a specified or determinable amount or benefit upon determinable contingencies. (emphasis added).

A "person as defined in subdivision 22-1-2(31)" includes in pertinent part, "any natural person, unborn child, association, limited liability company, corporation, firm, organization, partnership, or society." SDCL 22-1-2(31).

[¶19.] The trial court found: that Allianz reimbursed certain victims for some of the losses caused by Wingler's fraudulent acts; that Allianz was a victim of Wingler's fraud that suffered pecuniary damages; and, that Allianz was a victim under the provisions of SDCL 23A-28-2(5). The trial court further found: that Allianz was obligated legally and contractually to indemnify most of Wingler's victims for Wingler's conduct and that it did so by reimbursing all but one of the victims for the premiums paid to Wingler. Accordingly, the trial court concluded that Allianz suffered a loss as a direct and proximate result of Wingler's conduct and that Allianz was a "victim" under the definition of SDCL 23A-28-2(5).

[¶20.] The trial court's conclusions in this regard are supported by the record and the applicable authorities. SDCL 58-30-176 provides in pertinent part that, "[t]he insurer is responsible for the acts of its representatives and insurance producers[.]" This Court has further held under the law of agency that, "[g]enerally, a principal may be held liable for the fraud and deceit of his agent acting within the scope of his actual or apparent authority, even though the principal was unaware of or received no benefit from his agent's conduct." McKinney v. Pioneer Life Ins. Co., 465 NW2d 192, 194 (SD 1991). Thus, Allianz was made liable by statute and as an implied condition of its principal/agent relationship or contract with Wingler to

indemnify others suffering pecuniary damages as a result of Wingler's fraud and deceit committed within the scope of his actual or apparent authority. Wingler does not dispute this and concedes in his brief that Allianz reimbursed the victims pursuant to the statutory obligation created by SDCL 58-30-176 and principles of agency.

[¶21.] Wingler rests his argument on this Court's holding in State v. Sprecher, 2000 SD 17, 606 NW2d 138. In *Sprecher*, the defendant was found guilty of maintaining a public nuisance by failing to properly maintain a hog confinement and sewage lagoon. Beadle County ultimately abated the nuisance at a cost of some $11,000 and sought restitution for that amount in the criminal case against Sprecher. The trial court denied the request and this Court affirmed holding that the county's loss resulted from its affirmative action in abating the nuisance and that the county could not, by its own actions, place itself in the status of a victim for purposes of the restitution statutes and thereby recoup its costs. *See Sprecher*, 2000 SD 17, ¶ 8, 606 NW2d at 139. The distinction from this case is that the county was not under a statutory or contractual obligation to assume liability for the defendant's actions. Rather, the county abated the nuisance in the general interest of the public welfare. Here, in contrast, Allianz acted under statutory and contractual obligations to assume liability for Wingler's criminal acts. Thus, it did not, "by its own actions," place itself in the status of a victim to recoup its costs. For this reason, *Sprecher* is not an analogous case and is not controlling here.

[¶22.] Based upon the foregoing, we hold that the trial court did not err in determining that Allianz was a victim under SDCL 23A-28-2(5) entitled to

restitution from Wingler.  Accordingly, we find no abuse of discretion in the restitution award.

[¶23.]    Affirmed.

[¶24.]    GILBERTSON, Chief Justice, and SABERS, KONENKAMP, ZINTER and MEIERHENRY, Justices, participating.